**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| EAT WELL INVESTMENT GROUP INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRxADE HEALTH, INC. n/k/a SCIENTURE HOLDINGS, INC.; SUPERLATUS, INC., TIMOTHY ALFORD, SUREN AJJARAPU, PRASHANT PATEL, SHANKAR HARIHARAN, NARASIMHAN MANI, DONALD FELL, MAYUR DOSHI, SUBBARAO JAYANTHI, JEFF NEWELL, MICHAEL L. PETERSON<br><br>Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Eat Well Investment Group, Inc ("Eat Well") brings this Complaint against Defendants TRxADE Health, Inc. n/k/a Scienture Holdings, Inc., Superlatus, Inc, Timothy Alford, Suren Ajjarapu, Prashant Patel, Shankar Hariharan, Narasimhan Mani, Donald Fell, Mayur Doshi, Subbarao Jayanthi, Jeff Newell, and Michael L. Peterson, alleging as follows:

## SUMMARY OF THE ACTION

1. This action arises from Defendants' coordinated scheme to defraud Eat Well Investment Group, Inc. ("Eat Well") following its sale of Sapientia Technology, LLC ("Sapientia"), Eat Well's wholly-owned subsidiary. After fraudulently inducing the sale, Defendants breached their fiduciary duties and engaged in self-dealing and corporate misconduct to deprive Eat Well of its shareholder rights and rightful benefits, in violation of Florida law and federal securities regulations.

2. In June 2023, Eat Well entered into a definitive membership interest purchase

agreement (the "MIPA") for its wholly-owned subsidiary, Sapientia Technology Inc., ("Sapientia") to Superlatus, Inc. ("Superlatus"), as part of a planned NASDAQ merger (the "Merger") with TRxADE Health, Inc. n/k/a Scienture Holdings, Inc. ("TRxADE Health").

3. The acquisition of Sapientia was orchestrated by Defendants Timothy Alford, the CEO and majority shareholder of Superlatus, and Suren Ajjarapu, the CEO and Chairman of TRxADE Health. Defendants envisioned acquiring multiple plant-based food companies, consolidating them under Superlatus, and then merging with TRxADE Health to capitalize on the anticipated rise in TRxADE Health's share price. Alford and Ajjarapu stood to gain substantially from this strategy, given their acquisition and ownership of TRxADE Health common stock.

4. Recognizing the value of Sapientia's proprietary "extrusion" technology for plant-based products, Alford aggressively pursued the acquisition, making representations and assurances to Eat Well about the issuance of TRxADE Health common stock and the benefits Eat Well would receive as a shareholder. Eat Well relied on these representations in agreeing to the sale.

5. After Eat Well fully performed its obligations under the MIPA—including transferring ownership of Sapientia and additional assets—Defendants engaged in a scheme to defraud Eat Well. Instead of issuing Eatwell the TRxADE Health common stock that was specifically provided for in the MIPA, TRxADE Health, under the direction of Alford and Ajjarapu, issued Eatwell preferred stock that lacked voting rights and a right to share in dividends.

6. Months later, and after refusing to honor its commitments under the MIPA, Defendants Alford and Ajjarapu orchestrated the sale of Superlatus to an insider-controlled entity, Superlatus Foods, Inc., for a mere $1. The Stock Purchase Agreement identified Alford as a

representative of the buyer, evidencing the insider nature of the transaction. This sale was a sham, designed to offload the entity that was contractually indebted to Eat Well, thereby evading Superlatus's obligations under the MIPA and hindering Eat Well's ability to recover the amounts owed. By disposing of Superlatus in this manner, Defendants sought to defraud a known creditor and further deprive Eat Well of its rights under the MIPA.

7. Throughout 2023 and 2024, Defendants, who were substantial shareholders of TRxADE Health, willfully delayed issuing the TRxADE Health common stock owed to Eat Well. During this orchestrated delay, Defendants declared and paid two substantial special cash dividends—$8.00 per share on March 6, 2024, and $1.50 per share on July 9, 2024—to TRxADE Health common shareholders of record, which included Alford and Ajjarapu. By wrongfully withholding the common stock from Eat Well, Defendants ensured that Eat Well was unjustly excluded from these dividends, thereby enriching themselves at Eat Well's expense. These dividends were funded from the proceeds of TRxADE Health's $26 million sale of its health services technology—a transaction orchestrated by Defendants Alford and Ajjarapu.

8. Defendants' actions were part of a coordinated scheme to enrich themselves while intentionally depriving Eat Well of its rightful position as a TRxADE Health common shareholder. Their conduct violated their fiduciary duties, defrauded Eat Well of millions of dollars, and caused additional financial harm.

## THE PARTIES

9. Eat Well is a Canadian company with its headquarters in Vancouver, British Columbia. Eat Well is in the business of processing, distributing and marketing sustainable, plant-based foods. With a rich history spanning nearly 45 years, Eat Well and its subsidiaries have been

at the forefront of developing premium-quality plant-based foods.

10. Suren Ajjarapu ("Ajjarapu"), at all times material hereto, has been a citizen of Florida and has served as the Chief Executive Officer of TRxADE Health and as Chairman of the company's Board of Directors.

11. TRxADE Health, Inc. n/k/a Scienture Holdings, Inc., is a Delaware corporation, headquartered in Lutz, Florida. Prior to its merger with Superlatus, TRxADE Health was primarily a health services IT company focused on digitalizing the retail pharmacy experience by optimizing drug procurement, the prescription journey, and patient engagement in the U.S. In September 2024, TRxADE Health, Inc. announced that it changed its name and ticker symbol to "Scienture Holdings, Inc." and "SCNX", respectively, and that the business would continue as a Nasdaq-listed company.

12. Superlatus, Inc. is a Delaware corporation, headquartered in New York, New York. Superlatus is a self-described diversified food technology company that claims to provide food processing and forming technologies that create high nutrition, high taste, and textured foods.

13. Timothy Alford ("Alford") is a citizen of New York and served as the Chief Executive Officer of Superlatus. During the course of events described herein, Alford transitioned into the position of Chief Commercialization Officer (CCO) to focus on Superlatus's aggressive M&A strategy.

14. Prashant Patel ("Patel") served as a member of the Board of Directors of TRxADE Health during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Patel conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the

scheme to harm and exclude Eat Well.

15. Shankar Hariharan, Ph.D. ("Hariharan") served as a member of the Board of Directors of TRxADE Health during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Hariharan conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

16. Donald Fell ("Fell") served as a member of the Board of Directors of TRxADE Health during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Fell conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

17. Subbarao Jayanthi ("Jayanthi") served as a member of the Board of Directors of TRxADE Health during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Jayanthi conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

18. Narasimhan Mani, Ph.D. ("Mani") joined the Board of Directors of TRxADE Health on May 28, 2024. Mani conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by approving the July 9, 2024 special cash dividend.

19. Mayur Doshi ("Doshi") joined the Board of Directors of TRxADE Health on May 28, 2024. Doshi conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by approving the July 9, 2024 special cash dividend.

20. Jeff Newell ("Newell") served as a member of the Board of Directors of TRxADE Health until his voluntary resignation on May 30, 2024. While serving on the Board, Newell conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve the March 6, 2024 special cash dividend. This dividend improperly excluded Eat Well from participation, depriving it of its rightful shareholder benefits.

21. Michael L. Peterson ("Peterson") served as a member of the Board of Directors of TRxADE Health, Inc. until his voluntary resignation on May 30, 2024. While serving on the Board, Peterson conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve the March 6, 2024 special cash dividend. Peterson's actions knowingly furthered a conspiracy to exclude Eat Well from its rightful participation in the dividend, causing significant harm.

22. Defendants Ajjarapu, Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson (collectively the "TRxADE Board") conspired to breach their fiduciary duties to Eat Well by voting to approve the March 6, 2024 and/or July 9, 2024 special cash dividends, which were designed to exclude Eat Well from participation despite its entitlement as a shareholder. Each member of the TRxADE Board personally benefited from these dividends as shareholders of TRxADE Health, enriching themselves at Eat Well's expense and in direct violation of their fiduciary obligations. Additionally, each member of the TRxADE Board knew that Eat Well was owed common shares of the company, and knew that issuing a special dividend would unjustly exclude Eat Well from participating as a common shareholder.

**JURISDICTION AND VENUE**

23. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this

action because it is between citizens of different states, and the amount in controversy is greater than $75,000, exclusive of interest and costs.

24. This Court has personal jurisdiction over Defendants Ajjarapu and TRxADE Health, as both Defendants are citizens of Florida.

25. This Court has personal jurisdiction over Defendants Alford and Superlatus under Florida's long-arm statute (Fla. Stat. § 48.193(1)(a)(2)) because their actions in furtherance of a conspiracy with co-defendants caused tortious injury to Eat Well in Florida. Although Alford and Superlatus are not residents of Florida, their participation in a coordinated scheme to defraud Eat Well and breach fiduciary duties subjects them to jurisdiction in this state.

26. Alford and Superlatus, acting in concert with Florida resident Suren Ajjarapu, conspired to commit fraud and facilitate breaches of the fiduciary duties Ajjarapu owed to Eat Well. Ajjarapu's tortious acts, including delaying stock issuance and improperly declaring cash dividends in Florida, were part of the scheme orchestrated by Ajjarapu, Alford and Superlatus to deprive Eat Well of its rightful shareholder benefits.

27. The TRxADE Board, which includes Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson, conspired with Ajjarapu to breach the fiduciary duties Ajjarapu owed to Eat Well by approving the March 6, 2024 and July 9, 2024 special cash dividends that intentionally excluded Eat Well from participation as a shareholder. Each board member knowingly acted in concert with Ajjarapu, facilitating a scheme to deprive Eat Well of its shareholder rights and financial benefits while personally profiting from the dividends. The TRxADE Board actively participated in board meetings, discussions, and votes that directly advanced the scheme, thereby furthering Ajjarapu's breaches of fiduciary duty.

28. The TRxADE Board knowingly engaged in concerted actions with Ajjarapu, a Florida resident, to facilitate breaches of fiduciary duty that harmed Eat Well and enriched the board members at its expense. By working with Ajjarapu, the board members availed themselves of Florida's jurisdiction through their participation in corporate decisions and actions that emanated from Florida, including declaring and paying the special cash dividends, which were funded from proceeds derived from Florida-based corporate assets and operations. The dividends were declared and paid by TRxADE Health, a Florida-based company, and were intended to enrich the board members, including themselves as shareholders, while depriving Eat Well of its rightful benefits as a shareholder.

29. In furtherance of this conspiracy, Alford and Ajjarapu also engaged in coordinated actions that affected Eat Well's financial interests in Florida. These actions included (i) deliberately issuing TRxADE Health preferred stock instead of the promised common stock to obstruct Eat Well's shareholder rights; (ii) delaying the conversion of Eat Well's shares to ensure Eat Well's exclusion from substantial dividends declared and paid in Florida; and (iii) facilitating the sham sale of Superlatus, in Florida, to shield obligations owed to Eat Well.

30. Under Florida law, each conspirator is liable for the actions of other members of the conspiracy, even if the nonresident conspirator did not personally perform the tortious act within the state. By conspiring with Ajjarapu, a Florida resident, and benefiting from tortious acts committed in Florida, Alford and Superlatus are subject to this Court's jurisdiction pursuant to Florida Statute § 48.193(1)(a)(2).

## FACTS COMMON TO ALL COUNTS

### Superlatus Acquires Sapientia Tech from Eat Well for $10 million

31. In June 2023, Eat Well and Superlatus entered into the MIPA, under which Superlatus acquired Sapientia

32. The aggregate purchase price under the MIPA was $10,000,000. Superlatus agreed pay the Purchase Price to Eat Well at Closing as follows: USD $1,500,000 in cash consisting of (i) USD $350,000 in cash and no later than 21 Business Days after the Closing, (ii) secured debenture in the principal amount of USD $1,150,000 ("Debenture"), and (iii) common stock in TRxADE Health in an amount valued at USD $8,500,000 (the "Shares"), which share value would be set on the date of the closing of the Public Closing[1].

33. The Debenture is secured by 100% of the membership interests in Sapientia and began accruing interest at 12% per annum, compounded monthly, as of October 31, 2023. The Debenture matured on December 31, 2023. In its September 30, 2023 10-Q Filing with the SEC, TRxADE Health represented that the balance of this debt is $1,150,000[2].

34. Under the MIPA, 20% of the TRxADE Health common stock allocated to Eat Well was to be unrestricted immediately upon issuance, meaning Eat Well could sell those shares on the open market without waiting. The remaining 80% of the shares would be subject to a Volume-Weighted Average Price (VWAP) protection after 12 months, potentially protecting Eat Well from market manipulation or significant drops in share value.

[1] https://www.prnewswire.com/news-releases/eat-well-group-to-sell-sapientia-for-usd-10-million-in-nasdaq-merger-with-meds--superlatus-foods-301861230.html

[2] https://www.sec.gov/Archives/edgar/data/1382574/000149315224002429/form10-q.htm

35. During the events described herein, TRxADE Health's stock price hit a high of $34.80, which should have provided Eat Well with an opportunity to sell its TRxADE Health common stock at a favorable price. Due to Defendants' fraud and other unlawful conduct, Eat Well was wrongfully deprived of that opportunity.

36. As part of its acquisition of Sapientia, Superlatus intended to complete what is commonly referred to as a "reverse merger" with TRxADE Health on the NASDAQ (the "Merger"). Upon closing of the Merger, shareholders of Superlatus would receive 30,821,918 shares of TRxADE Health.

37. And as stipulated in the MIPA, Eat Well was entitled to receive $8,500,000.00 worth of common stock in TRxADE Health - to be issued by TRxADE Health directly to Eat Well. Under the merger, TRxADE Health assumed all of Superlatus's Closing Obligations under the MIPA.

38. Under the merger, Superlatus would become a wholly owned subsidiary of TRxADE Health, which would then reorganize TRxADE Health's assets and operations to pivot its business focus into a plant-based food processing and forming technologies company. TRxADE Health intended to divest its then-existing and unrelated health services assets after the Merger[3].

39. Superlatus's CEO, Tim Alford, touted the acquisition of Sapientia Tech at the time: "This transformative deal positions us to build a company with an exceptional growth strategy. The NASDAQ listing not only grants us access to a wealth of potential Food Tech

[3] https://www.prnewswire.com/news-releases/eat-well-group-to-sell-sapientia-for-usd-10-million-in-nasdaq-merger-with-meds--superlatus-foods-301861230.html

acquisitions but also presents remarkable opportunities for all stakeholders involved. We are particularly thrilled with the acquisition of Sapientia from Eat Well as it enables us to leverage our extensive network of tens of thousands of retailers, school boards, and hotels to distribute Sapientia's exceptional products."[4]

40. The Closing of the MIPA occurred in June 2023.

41. Eat Well fully performed its obligations under the MIPA, including transferring ownership of Sapientia to Superlatus.

42. Superlatus still touts the value of the Sapientia acquisition on its website:

> Sapientia has created and filed four foundational patents revolving around the "protein curl" and crispy puff style snack. By focusing on the texture and crunch, Sapientia's disruptive patents solve one of the major problems large-scale snack-food companies have struggled with for years; the utility of the snack; including texture, flavour, and offering a guilt free, not fried, natural and healthy alternative to the majority of snack food products on the market today.
> https://superlatus.com/portfolio/sapientiafoodtech

**Superlatus and TRxADE Health Complete the Merger**

43. In July 2023, Superlatus and TRxADE Health closed on an Amended and Restated Agreement and Plan of Merger. Shareholders of Superlatus received (i) 136,441 shares of TRxADE Health common stock, representing 19.99% of the total issued and outstanding TRxADE Health

[4] https://www.prnewswire.com/news-releases/eat-well-group-to-sell-sapientia-for-usd-10-million-in-nasdaq-merger-with-meds--superlatus-foods-301861230.html

common stock at the closing of the Merger, and (ii) 306,855 shares of a new class of TRxADE Health non-voting convertible preferred stock with a conversion ratio of 100 to one, multiplied by such shareholder's pro rata percentage ownership.

44. And as stipulated in the MIPA, Eat Well was entitled to receive $8,500,000.00 worth of common stock in TRxADE Health - to be issued by MEDS directly to EatWell, along with the payment of $1,500,000 in cash (the "Closing Obligations").

45. Instead of issuing Eat Well the common stock it was contractually obligated to provide, TRxADE Health provided the aforementioned preferred stock. After improperly issuing Eat Well preferred stock, Defendants Ajjarapu and Alford then intentionally delayed converting Eat Well's preferred stock to common stock – so that they could exclude Eat Well from significant shareholder benefits, including cash dividends, thereby enriching themselves at Eat Well's expense.

46. Upon consummation of the merger between TRxADE Health and Superlatus, TRxADE Health assumed all of the Closing Obligations.

47. Instead of fulfilling these Closing Obligations, TRxADE Health and Superlatus have taken unilateral actions that have directly impacted EatWell's rights under the MIPA. These actions include, but are not limited to: (1) intentionally issuing Preferred Stock instead of Common Stock to EatWell, (2) surrendering certain TRxADE Health Preferred Stock and reducing certain TRxADE Health common stock on January 8, 2024 (3) unilaterally reducing the number of shares allocated to Eat Well, which adversely affected Eat Well's holdings.

**Alford and Ajjarapu Devise and Implement a Scheme to Defraud Eat Well**

48. Before its merger, TRxADE Health was a health service IT company that provided

a health services platform, designed to optimize prescription drug procurement and sales, as well as related pharmaceutical logistics. It had no business operations in the agricultural, agritech, or related food industries.

49. After July 2023 merger, Superlatus operated as a wholly owned subsidiary of TRxADE Health and under the direction of Alford, continued to aggressively expand Superlatus's brand acquisitions and market reach. In August 2023, Superlatus acquired The Urgent Company and its Coolhaus, Brave Robot, Modern Kitchen and California Performance Co. consumer brands from Perfect Day, Inc. The acquired brands' products are sold in more than 6,000 stores nationwide including Whole Foods, Thrive Market, Kroger, and Costco as well as many independent markets across the country.

50. In October 2023, Superlatus acquired the assets of Spero Foods, a plant-based tech company "[d]isrupting the dairy and egg industry." In a press release, Defendant Alford touted the acquisition:

> We are thrilled to welcome the Spero Food brands to our portfolio of CPG assets," said Superlatus CEO Timothy Alford. "Knowing that climate change affects every person on the earth, Spero has taken it upon themselves to create delicious, nutritious, and sustainable plant-based foods that are competitive in pricing to traditional dairy products. Together with the Spero team, we are most excited by the new opportunities to grow Spero globally[5].

51. In October 2023, Superlatus also announced a distribution partnership with North

[5] https://healthstockshub.com/news/nasdaq/scnx/superlatus-newly-merged-with-trxade-health-acquires-the-assets-of-spero-foods-a-plant-based-tech-company-disrupting-the-dairy-and-egg-industry

America's leading wholesale distributor, which would provide Superlatus with expended points of retail sales in over 3,000 retailers across the United States[6].

52. Following the merger and its acquisition of Superlatus, TRxADE Health intended to divest its existing health service assets. Defendant Ajjarapu, as CEO of TRxADE Health, spearheaded that effort.

53. Soon after, TRxADE Health sold its main health service technology for approximately $26 million. At the time, both Ajjarapu and Alford owned a substantial percentage of TRxADE Health common shares.

54. After TRxADE Health closed on the $26 million sale of its health services technology, Ajjarapu and Alford became concerned about the common shares TRxADE Health still owed to Eat Well.

55. Defendants, including Ajjarapu and Alford, repeatedly assured Eat Well that the conversion of its preferred stock to common stock would occur promptly, provided certain conditions were met. Initially, Defendants linked the conversion to specific milestones, such as completion of audits, even requesting Eat Well's assistance in providing audit materials, which Eat Well provided. As time passed, the justification shifted, with Defendants asserting that the conversion required a shareholder vote. These representations misled Eat Well into believing the conversion was imminent, only to have the process perpetually delayed.

56. On March 5, 2024, and despite Superlatus's growth and operating success throughout 2023, Ajjarapu and Alford orchestrated the sale of Superlatus to a new entity,

[6] https://healthstockshub.com/news/nasdaq/scnx/superlatus-announces-distribution-partnership-with-north-america-s-leading-wholesale-distributor-and-expanded-points-of-retail-sales

"Superlatus Foods, Inc." for one dollar ($1). The Stock Purchase Agreement identifies Imran Firoz as the CEO of this new entity, Superlatus Foods, Inc., and also includes Defendant Alford a representative of the "Buyer", who is entitled to notice under the Agreement (see pg. 7)[7].

57. Defendants Ajjarapu and Alford orchestrated the sale of Superlatus so they could offload the entity contractual indebted to Eat Well under the MIPA and then exclude Eat Well from benefiting from its dividend rights as a common shareholder of TRxADE Health. At the time Defendants sold Superlatus to Superlatus Foods, Inc., TRxADE Health was contractually obligated to issue Eat Well common shares in TRxADE Health valued at $8,500,000.00, not the preferred shares it intentionally and erroneously issued.

58. Having recently closed on the $26 million of TRxADE Health's health-based services tech, Ajjarapu, Alford and the TRxADE Board of Directors desired to distribute the bulk of those gains as dividends. At the time, the majority shareholders of TRxADE Health included Ajjarapu, Alford and the TRxADE Board, and the Defendants stood to receive millions of dollars they otherwise would not be entitled to, if dividends were declared before TRxADE Health provided Eat Well with the common shares that Eat Well was rightly entitled to.

59. On or about March 6, 2024, and in furtherance of their scheme to defraud Eat Well, Defendants Ajjarapu and the TRxADE Board declared a special cash dividend of $8.00 per share of common stock. The special dividend was paid using a portion of the proceeds from the closing of the aforementioned sale of the TRxADE Health's web-based market platform assets. The special cash dividend was payable to stockholders of record as of March 18, 2024, with the

[7] https://contracts.justia.com/companies/trxade-group-inc-3127/contract/1273093/

dividend being paid on or about March 22, 2024[8].

60. But-for Ajjarapu and Alford efforts to defraud Eat Well, and had TRxADE Health issued common shares to Eat Well as required under the MIPA and merger – Eat Well would have been a stockholder of record as of March 18, 2024 and would have been entitled to participate in the special cash dividend.

61. On or about July 9, 2024, Defendants Ajjarapu and the TRxADE Board declared a second special cash dividend of $1.50 per share of common stock. The special dividend was also paid from a portion of the proceeds from the closing of the aforementioned sale of the TRxADE Health's web-based market platform assets. The special cash dividend was payable to stockholders of record as of July 19, 2024, with the dividend being paid on or about July 24, 2024[9].

62. But for Ajjarapu and Alford efforts to defraud Eat Well, and had TRxADE Health issued common shares to Eat Well as required under the MIPA and merger – Eat Well would have been a stockholder of record as of July 19, 2024 and would have been entitled to participate in the special cash dividend.

63. At all times material hereto, the TRxADE Board knew that Ajjarapu owed a fiduciary duty to Eat Well as a preferred shareholder contractually entitled to receive TRxADE Health common stock and the associated rights and benefits. The TRxADE Board knew that Ajjarapu's fiduciary duties included the obligation to act in good faith, prioritize the interests of shareholders like Eat Well, and ensure compliance with TRxADE Health's contractual obligations under the Membership Interest Purchase Agreement (MIPA).

[8] https://fintel.io/doc/sec-trxade-health-inc-1382574-ex991-2024-march-06-19788-635

[9] https://fintel.io/doc/sec-trxade-health-inc-1382574-ex991-2024-july-09-19913-7892

64. The TRxADE Board also knew that Ajjarapu was intentionally delaying the issuance of common stock to Eat Well, orchestrating the exclusion of Eat Well from the March 6, 2024 and July 9, 2024 special cash dividends, and actively working to enrich himself and the Board members as shareholders at Eat Well's expense. Despite their knowledge of these breaches, the TRxADE Board conspired with and assisted Ajjarapu by approving actions that advanced his scheme, including the declaration of the special cash dividends and other corporate decisions designed to deprive Eat Well of its rightful benefits as a shareholder.

65. In July 2024, TRxADE Health finalized an all-stock merger with Scienture, LLC, a New York-based pharmaceutical company. The transaction, valued at $103 million, resulted in TRxADE′s acquisition of all Scienture′s assets in exchange for a mix of common and non-voting convertible preferred stock. Following the merger, TRxADE Health intended to rebrand as Scienture Holdings, Inc., with plans to continue trading on the Nasdaq. [10]

66. In September 2024, TRxADE Health, Inc. announced that it changed its name and ticker symbol to "Scienture Holdings, Inc." and "SCNX", respectively, and that the business would continue as a Nasdaq-listed company. Ajjarapu remains CEO of the Company and Chairman of the Board of Directors.[11]

**COUNT 1**
**(Breach of Fiduciary Duty against Suren Ajjarapu)**

67. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 - 66 as if fully

---

[10] https://www.investing.com/news/company-news/103m-allstock-transaction-merges-trxade-and-scienture-forming-new-company-93CH-3539243

[11] https://www.globenewswire.com/news-release/2024/09/24/2952140/0/en/TRxADE-Health-Inc-Announces-Name-Change-to-Scienture-Holdings-Inc-and-Ticker-Symbol-Change-to-SCNX.html

set forth herein.

68. Defendant Ajjarapu is the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of TRxADE Health, Inc., which merged with Superlatus, Inc. ("Superlatus") in July 2023.

69. Upon the merger, TRxADE Health assumed all obligations under the Membership Interest Purchase Agreement ("MIPA") between Eat Well and Superlatus, including the obligation to issue $8,500,000 worth of TRxADE Health common stock to Eat Well.

70. As CEO and Chairman of TRxADE Health, Defendant owed fiduciary duties to Eat Well arising from TRxADE Health's assumption of obligations under the Membership Interest Purchase Agreement ("MIPA") and Eat Well's status as a preferred shareholder contractually entitled to receive common stock.

71. Defendant breached his fiduciary duties owed to Eat Well by:

a. Failing to cause TRxADE Health to issue $8,500,000 worth of TRxADE Health common stock to Eat Well as required under the MIPA;

b. Instead causing TRxADE Health to issue preferred stock to Eat Well, contrary to the terms of the MIPA;

c. Failing to cause TRxADE Health to pay the $1,500,000 cash liability it assumed under the MIPA;

d. Orchestrating the timing and declaration of special cash dividends to exclude Eat Well from receiving dividends it would have been entitled to as a common shareholder;

e. Participating in the sale of Superlatus to Superlatus Foods, Inc. for $1, intending

to hinder, delay, or defraud Eat Well as a creditor;

f. Failing to disclose material information to Eat Well regarding these actions, despite a duty to do so.

72. As a direct and proximate result of Defendant's breaches, Eat Well suffered damages, including but not limited to: (a.) the loss of $8,500,000 worth of TRxADE Health common stock; (b.) the loss of substantial dividend income from special cash dividends declared on March 6, 2024, and July 9, 2024; (c.) the deprivation of shareholder rights associated with TRxADE Health common stock, including voting rights and participation in corporate governance; (d.) financial losses due to the diminished value and rights of the preferred stock improperly issued (e.) the loss of its right to sell its allotment of TRxADE Health common shares on the open market; and (f.) damages associated with additional debt servicing obligations that Eat Well unnecessarily incurred due to Defendants' acts and omissions.

73. Defendant's actions were willful, malicious, and in conscious disregard of Eat Well's rights, justifying an award of punitive damages.

**COUNT 2**
**(Fraud against Suren Ajjarapu)**

74. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-66, as if fully set forth herein.

75. Under the MIPA, Eat Well was to receive an aggregate purchase price of $10,000,000, including $8,500,000 worth of TRxADE Health common stock upon the closing of the merger between Superlatus and TRxADE Health.

76. In July 2023, Superlatus and TRxADE Health completed a merger ("Merger"), and TRxADE Health assumed all obligations under the MIPA, including the obligation to issue

$8,500,000 worth of TRxADE Health common stock to Eat Well.

77. Ajjarapu, acting as CEO and Chairman of TRxADE Health, represented to Eat Well that TRxADE Health would issue $8,500,000 worth of common stock to Eat Well as part of the purchase price under the MIPA.

78. Defendant knew at the time of these representations that TRxADE Health would not issue the promised common stock but instead intended to issue preferred stock, which lacked the rights and benefits of common stock, including voting rights and eligibility for dividends.

79. Defendant intentionally failed to disclose to Eat Well material facts, including:

a. That TRxADE Health would issue preferred stock instead of common stock to Eat Well.

b. That TRxADE Health planned to declare special cash dividends to common shareholders, from which Eat Well would be excluded due to holding preferred stock.

c. That TRxADE Health intended to engage in corporate actions that would diminish the value of any securities issued to Eat Well.

80. Ajjarapumade these misrepresentations and omissions with the intent to induce Eat Well to enter into the MIPA and proceed with the sale of Sapientia.

81. Eat Well justifiably relied on Defendant's representations and omissions, believing it would receive $8,500,000 worth of TRxADE Health common stock and the associated rights and benefits.

82. During the period of July 2023 through March 2024, Ajjarapu repeatedly assured Eat Well that the conversion of its preferred stock to common stock would occur promptly.

Initially, Ajjarapu linked the conversion to specific milestones, such as completion of audits, which Eat Well assisted in completing. As time passed, the justification shifted, with Ajjarapu asserting that the conversion required a shareholder vote. These misrepresentations were false and were intended to mislead Eat Well into believing the conversion was imminent, only to have the process perpetually delayed, so that TRxADE Health, under Ajjarapu's leadership, could declare cash dividends and exclude Eat Well from participating.

83. As a direct and proximate result of Defendant's breaches, Eat Well suffered damages, including but not limited to: (a.) the loss of $8,500,000 worth of TRxADE Health common stock; (b.) the loss of substantial dividend income from special cash dividends declared on March 6, 2024, and July 9, 2024; (c.) the deprivation of shareholder rights associated with TRxADE Health common stock, including voting rights and participation in corporate governance; (d.) financial losses due to the diminished value and rights of the preferred stock improperly issued (e.) the loss of its right to sell its allotment of TRxADE Health common shares on the open market; and (f.) damages associated with additional debt servicing obligations that Eat Well unnecessarily incurred due to Defendants' acts and omissions. Defendant's actions were willful, malicious, and in conscious disregard of Eat Well's rights.

**COUNT 3**
**(Shareholder Oppression against Suren Ajjarapu)**

84. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-66, as if fully set forth herein.

85. Ajjarapu, as Chief Executive Officer and Chairman of the Board of Directors of TRxADE Health, owed fiduciary duties to all shareholders of TRxADE Health, including Eat Well.

86. These fiduciary duties included the duty of loyalty, the duty of care, and the duty of good faith, requiring Defendant to act in the best interests of all shareholders and to treat them fairly and equitably.

87. Defendant engaged in actions constituting shareholder oppression by:

a. Failing to issue the $8,500,000 worth of TRxADE Health common stock to Eat Well as required, instead issuing preferred stock without voting rights and dividend entitlements.

b. Orchestrating and timing special cash dividends payable only to common shareholders, from which Eat Well was excluded due to holding preferred stock.

c. Engaging in transactions that diluted Eat Well's equity interest and diminished the value of its investment.

d. Failing to provide Eat Well with adequate information and disclosures regarding corporate actions affecting its rights as a shareholder.

e. Acting in a manner that unfairly prejudiced Eat Well's interests as a shareholder.

88. Defendant's actions were oppressive, fraudulent, and unfairly disregarded Eat Well's rights as a shareholder, violating his fiduciary duties under Florida law.

89. As a direct and proximate result of Defendant's breaches, Eat Well suffered damages, including but not limited to: (a.) the loss of $8,500,000 worth of TRxADE Health common stock; (b.) the loss of substantial dividend income from special cash dividends declared on March 6, 2024, and July 9, 2024; (c.) the deprivation of shareholder rights associated with TRxADE Health common stock, including voting rights and participation in corporate

governance; (d.) financial losses due to the diminished value and rights of the preferred stock improperly issued (e.) the loss of its right to sell its allotment of TRxADE Health common shares on the open market; and (f.) damages associated with additional debt servicing obligations that Eat Well unnecessarily incurred due to Defendants' acts and omissions.

**COUNT 4**
**(Fraudulent Transfer against Suren Ajjarapu)**

90. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-66, as if fully set forth herein.

91. Eat Well is a creditor of TRxADE Health, Inc. by virtue of obligations under the MIPA, whereby TRxADE Health assumed the obligation to issue $8,500,000 worth of TRxADE Health common stock to Eat Well as part of the purchase price for Sapientia Technology Inc.

92. Ajjarapu, as the Chief Executive Officer and Chairman of the Board of Directors of TRxADE Health, had control over TRxADE Health's corporate actions, including asset dispositions and fulfillment of obligations to creditors like Eat Well.

93. On or about March 5, 2024, Ajjarapu, acting on behalf of TRxADE Health, orchestrated the sale of Superlatus, Inc. —a subsidiary of TRxADE Health —to Superlatus Foods, Inc. for the nominal sum of $1.

94. Superlatus Foods, Inc. is an entity closely associated with Defendant Timothy Alford , the former CEO and majority shareholder of Superlatus prior to its sale. Alford is listed as a representative of the Buyer in the Stock Purchase Agreement for the sale of Superlatus, evidencing the insider nature of the transaction.

95. The transfer of Superlatus was made without TRxADE Health receiving reasonably equivalent value in exchange for the asset, as the sale price of $1 was grossly inadequate compared

to Superlatus's fair market value.

96. At the time of the transfer, Superlatus and TRxADE Health were indebted to Eat Well for $8,500,000 worth of TRxADE Health common stock, which had not been issued as required under the MIPA.

97. Superlatus was insolvent or became insolvent as a result of the transfer, as it disposed of a significant asset without fair consideration, leaving it unable to satisfy its obligations to creditors like Eat Well.

98. The transfer of Superlatus was made with the actual intent to hinder, delay, or defraud Eat Well in its efforts to collect the debt owed under the MIPA.

99. Ajjarapu's actions demonstrate several "badges of fraud" indicative of actual intent under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, including:

a. Transfer to an insider: The Buyer, Superlatus Foods, Inc., is represented by Alford, an insider due to his prior role as CEO and majority shareholder of Superlatus and his involvement in TRxADE Health's transactions.

b. Retention of control: Upon information and belief, Alford and associates retained control over Superlatus's operations post-transfer.

c. Concealment of transfer: The transfer was not disclosed to Eat Well and was orchestrated without its knowledge.

d. Inadequate consideration: The sale price of $1 was grossly inadequate for an asset of Superlatus's value.

e. Insolvency of debtor: Superlatus was insolvent or became insolvent shortly after the transfer, unable to meet its obligations to Eat Well.

f. Timing of transfer: The transfer occurred shortly after Superlatus and TRxADE Health incurred a substantial debt to Eat Well under the MIPA.

100. As a direct and proximate result of the fraudulent transfer orchestrated by Ajjarapu, Eat Well has been hindered, delayed, and defrauded in its efforts to collect the $8,500,000 worth of TRxADE Health common stock owed under the MIPA

101. The transfer of Superlatus for nominal consideration effectively removed substantial assets from TRxADE Health that could have been used to satisfy its debt to Eat Well.

102. Eat Well has suffered damages, including: a. the value of the unissued $8,500,000 worth of TRxADE Health common stock; b. loss of potential dividend income and shareholder rights associated with the common stock; c. costs incurred in attempting to recover the debt owed.

103. Under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, et seq., a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

104. Ajjarapu, acting on behalf of TRxADE Health, made the transfer of Superlatus with actual intent to hinder, delay, or defraud Eat Well, a creditor of TRxADE Health.

105. The transfer was made without TRxADE Health receiving reasonably equivalent value, and TRxADE Health was insolvent at the time of the transfer or became insolvent as a result thereof.

106. Eat Well is entitled to remedies including avoidance of the transfer, attachment of the transferred asset, injunctive relief, appointment of a receiver, and damages equal to the value of the asset transferred or the amount necessary to satisfy Eat Well's claim.

**COUNT 5**
**(Shareholder Oppression against Timothy Alford)**

107. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 - 66, as if fully set forth herein.

108. Timothy Alford, in his capacity as CEO and later Chief Commercialization Officer of Superlatus, owed fiduciary duties to Eat Well. These duties encompassed the duty of loyalty, care, and good faith, requiring Alford to act in the best interests of the shareholders and ensure fair treatment.

109. Alford engaged in actions that constituted shareholder oppression, including but not limited to the following:

a. Alford participated in the improper issuance of preferred stock to Eat Well, rather than the $8,500,000 worth of common stock specified in the MIPA. The preferred stock lacked the voting rights and dividend eligibility associated with common stock, diminishing Eat Well's shareholder rights.

b. Alford engaged in delay tactics to avoid converting the preferred shares to common stock. Initially, Alford and other defendants claimed that conversion was contingent upon completing audits and securing audit-related materials, which Eat Well provided. When these conditions were met, Alford shifted the rationale, alleging that a shareholder vote was required for the conversion. This evolving justification misled Eat Well into believing the conversion was imminent, while perpetually postponing the correction.

c. By delaying the conversion, Alford ensured that Eat Well remained ineligible for two substantial cash dividends declared by TRxADE Health: $8.00 per

share on March 6, 2024, and $1.50 per share on July 9, 2024. This exclusion enriched Alford and other shareholders at Eat Well's expense.

d. On or about March 5, 2024, Alford orchestrated the sale of Superlatus to Superlatus Foods Inc. for $1. This transaction offloaded Superlatus's obligations to Eat Well without fair consideration, further undermining Eat Well's ability to recover the rights and benefits promised under the MIPA.

e. Alford's conduct unfairly prejudiced Eat Well by depriving it of significant shareholder rights and economic benefits, including: a. The right to receive $8,500,000 worth of TRxADE Health common stock. b. Participation in substantial cash dividends paid to common shareholders. c. Voting rights and the ability to influence corporate governance. d. The opportunity to sell TRxADE Health common shares on the open market, including during periods of favorable stock prices.

110. As a direct and proximate result of Alford's oppressive conduct, Eat Well suffered substantial damages, including those stated herein.

**COUNT 6**
**(Fraud against Timothy Alford)**

111. Plaintiff repeats and re-alleges each allegation set forth in g paragraphs 1 - 66, as if fully set forth herein.

112. Plaintiff repeats and re-alleges each allegation set forth in the preceding paragraphs as if fully set forth herein.

113. Alford, acting as CEO and majority shareholder of Superlatus, represented to Eat Well that Superlatus would ensure that Eat Well received $8,500,000 worth of TRxADE Health

common stock as part of the purchase price under the MIPA.

114. Alford knew at the time of these representations that Superlatus would not ensure the issuance of the promised common stock but instead intended to issue preferred stock, which lacked the rights and benefits of common stock, including voting rights and eligibility for dividends.

115. Alford intentionally failed to disclose to Eat Well material facts, including:

a. That Superlatus would not provide for the issuance of TRxADE Health common stock to Eat Well as agreed.

b. That Eat Well would be issued preferred stock instead of common stock.

c. That Alford and others planned to orchestrate corporate actions that would deprive Eat Well of the benefits associated with common stock ownership, including significant dividends.

116. Alford made these misrepresentations and omissions with the intent to induce Eat Well to enter into the MIPA and proceed with the sale of Sapientia.

117. Eat Well justifiably relied on Alford's representations and omissions, believing it would receive $8,500,000 worth of TRxADE Health common stock and the associated rights and benefits.

118. During the period of July 2023 through March 2024, Alford repeatedly assured Eat Well that the conversion of its preferred stock to common stock would occur promptly. Initially, Alford linked the conversion to specific milestones, such as completion of audits, which Eat Well assisted in completing. As time passed, the justification shifted, with Alford asserting that the conversion required a shareholder vote. These misrepresentations were false and were intended to mislead Eat Well into believing the conversion was imminent, only to have the process perpetually

delayed, so that TRxADE Health, with Alford as a shareholder, could declare cash dividends and exclude Eat Well from participating.

119. As a direct and proximate result of Alford's fraudulent misrepresentations and omissions, Eat Well has suffered damages, including: (a) the failure to receive the $8,500,000 worth of TRxADE Health common stock as promised; (b) the loss of substantial dividend income from special cash dividends declared by TRxADE Health; (c) the opportunity to sell TRxADE Health common shares on the open market, including during periods of favorable stock prices; (d) the deprivation of voting rights and participation in corporate governance; (e) financial losses due to the diminished value and rights associated with the preferred stock improperly issued.

120. Alford's actions were willful, malicious, and in conscious disregard of Eat Well's rights.

**COUNT 7**
**(Fraudulent Transfer against Timothy Alford)**

121. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 - 66, as if fully set forth herein.

122. Eat Well is a creditor of Superlatus by virtue of obligations under the Membership Interest Purchase Agreement ("MIPA") executed in June 2023.

123. Following the merger between Superlatus and MEDS in July 2023, Superlatus operated as a wholly owned subsidiary of TRxADE Health. Under Alford's direction, Superlatus aggressively expanded its business throughout 2023, acquiring several companies and brands

124. Despite Superlatus's growth and operating success, on or about March 5, 2024, Alford, acting on behalf of Superlatus, orchestrated the sale of Superlatus to a newly formed entity, Superlatus Foods, Inc., for the nominal sum of $1.

125. The Stock Purchase Agreement for this sale identifies Imran Firoz as the CEO of Superlatus Foods, Inc., and includes Alford as a representative of the Buyer, evidencing the insider nature of the transaction.

126. At the time of the sale, Superlatus was indebted to Eat Well under the MIPA, having failed to: (a) Pay the $350,000 cash payment due at Closing; (b) Issue or deliver the secured Debenture of $1,150,000; (c) Issue the $8,500,000 worth of TRxADE Health common stock to Eat Well.

127. The transfer of Superlatus for $1 was made without Superlatus receiving reasonably equivalent value in exchange for its assets, which had significantly increased in value due to the acquisitions and business expansion under Alford's leadership.

128. Superlatus was insolvent or became insolvent as a result of the transfer, as it disposed of substantial assets without fair consideration, leaving it unable to satisfy its obligations to creditors like Eat Well.

129. Alford orchestrated the transfer with actual intent to hinder, delay, or defraud Eat Well in its efforts to collect the debt owed under the MIPA.

130. The transfer demonstrates several "badges of fraud" under Florida's Uniform Fraudulent Transfer Act ("FUFTA"), including:

a. Transfer to an Insider: The Buyer, Superlatus Foods, Inc., is closely associated with Alford, who is listed as a representative entitled to notice under the Stock Purchase Agreement.

b. Inadequate Consideration: The sale price of $1 is grossly inadequate for a company with Superlatus's assets and operations.

c. Insolvency: Superlatus was insolvent or became insolvent shortly after the transfer, unable to meet its obligations to Eat Well.

d. Concealment: The transfer was not disclosed to Eat Well and was orchestrated without its knowledge.

e. Timing of the Transfer: The transfer occurred shortly after Superlatus incurred substantial debts to Eat Well under the MIPA.

131. As a direct and proximate result of Alford's actions, Eat Well has been hindered, delayed, and defrauded in its efforts to collect the $10,000,000 owed under the MIPA.

132. Pursuant to Florida's Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, et seq., a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

133. Alford, acting with actual intent to defraud Eat Well, caused Superlatus to transfer its assets to Superlatus Foods, Inc. without receiving reasonably equivalent value, in violation of Florida law.

**COUNT 8**
**Civil Conspiracy (Fraud)**
**Against Ajjarapu, TRxADE Health, Alford and Superlatus**

134. Plaintiff repeats and re-alleges every allegation set forth in paragraphs 1 - 66, as if fully set forth herein.

135. Defendants Ajjarapu, TRxADE Health, Alford and Superlatus, acting in concert, devised and executed a scheme to defraud Eat Well in connection with the sale of its subsidiary, Sapientia under the Membership Interest Purchase Agreement.

136. Defendants assured Eat Well that in exchange for Sapientia, it would receive

$8,500,000 in common stock of TRxADE Health. Relying on these assurances, Eat Well agreed to the transaction and transferred its assets in full performance of the MIPA.

137. After acquiring Sapientia, Defendants deliberately issued Eat Well preferred stock instead of common stock, despite their prior assurances. This preferred stock lacked the voting rights, liquidity, and dividend rights that were essential components of the promised consideration. Defendants knew that the issuance of preferred stock would significantly impair Eat Well's ability to benefit from the transaction.

138. To prevent Eat Well from gaining the benefits of the promised common stock, Defendants intentionally delayed conversion of the preferred stock. They shifted the justification for the delay multiple times, initially attributing it to pending audits and later to a need for shareholder votes, all to mislead Eat Well into believing conversion was imminent.

139. During this period, Defendants declared and paid substantial dividends to common shareholders: (a) an $8.00 per share dividend on March 6, 2024; and (b) a $1.50 per share dividend on July 9, 2024.

140. By withholding the common stock from Eat Well, Defendants ensured that Eat Well was excluded from these dividends, enriching themselves at Eat Well's expense.

141. Defendants furthered their scheme by orchestrating a sham sale of Superlatus to Superlatus Foods Inc., an insider-controlled entity, for $1. This maneuver removed obligations owed to Eat Well from the balance sheet of Superlatus and insulated Defendants from liability.

142. Each Defendant actively participated in and furthered the fraudulent scheme, and each is liable for the conduct of the others. Ajjarapu and Alford used their control over TRxADE Health and Superlatus to coordinate the issuance of preferred stock, the declaration of dividends,

and the timing of the sham sale, all with the intent to defraud Eat Well.

143. As a direct and proximate result of Defendants' conduct, Eat Well suffered damages, including but not limited to: (a.) the loss of $8,500,000 worth of TRxADE Health common stock; (b.) the loss of substantial dividend income from special cash dividends declared on March 6, 2024, and July 9, 2024; (c.) the deprivation of shareholder rights associated with TRxADE Health common stock, including voting rights and participation in corporate governance; (d.) financial losses due to the diminished value and rights of the preferred stock improperly issued (e.) the loss of its right to sell its allotment of TRxADE common shares on the open market; and (f.) damages associated with additional debt servicing obligations that Eat Well unnecessarily incurred due to Defendants' acts and omissions. Defendant's actions were willful, malicious, and in conscious disregard of Eat Well's rights.

144. Defendants acted in furtherance of a common plan to defraud Eat Well and are each jointly and severally liable for all actions taken by any co-conspirator in furtherance of the scheme.

145. Defendants' conduct was intentional, malicious, and designed to enrich themselves at the expense of Eat Well, justifying an award of punitive damages.

WHEREFORE, Plaintiff Eat Well demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and such other relief as this Court deems just and proper.

**COUNT 9**
**Civil Conspiracy (Breach of Fiduciary Duty)**
**Against Ajjarapu, TRxADE Health, Alford and Superlatus**

146. Plaintiff repeats and re-alleges every allegation set forth in paragraphs 1-66, as if fully set forth herein.

147. Ajjarapu, as CEO and Chairman of TRxADE Health, owed fiduciary duties to Eat Well, including duties of loyalty, care, and good faith, by virtue of TRxADE's assumption of obligations under the MIPA between Eat Well and Superlatus, and Eat Well's status as a preferred shareholder that was contractually entitled to receive common stock.

148. Ajjarapu's fiduciary duties included, but were not limited to: ensuring that TRxADE Health honored its contractual commitment to issue $8,500,000 worth of common stock to Eat Well; refraining from actions that would dilute or impair Eat Well's shareholder rights, including its right to dividends, voting rights, and liquidity; and acting in good faith and in the best interests of all shareholders, including Eat Well, by providing truthful information and avoiding self-enrichment at the expense of Eat Well.

149. Ajjarapu breached these duties by issuing preferred stock to Eat Well instead of the promised common stock, withholding shareholder rights, and delaying the conversion of shares to ensure Eat Well was excluded from significant dividends declared on March 6, 2024, and July 9, 2024. Ajjarapu further participated in a sham sale of Superlatus Inc. for $1 to evade MEDS's obligations under the MIPA, depriving Eat Well of recourse against Superlatus.

150. Defendants Timothy Alford, TRxADE Health, and Superlatus, knowing of Ajjarapu's fiduciary duties to Eat Well, acted together to assist and encourage Ajjarapu's breaches. They collaborated in issuing preferred stock, misled Eat Well about the status of the stock conversion, and ensured that dividends were declared and paid only to common shareholders, including themselves. Defendants' actions were designed to exclude Eat Well from financial benefits and shareholder rights, enriching themselves at Eat Well's expense.

151. Each Defendant took steps to further this scheme and is liable for the conduct of

the others. Their joint actions ensured that Ajjarapu could breach his fiduciary duties while shielding themselves from liability. The sham sale of Superlatus exemplifies the coordinated nature of their misconduct, as it insulated assets from Eat Well's claims and solidified the exclusion of Eat Well from shareholder benefits.

152. As a direct and proximate result of Defendants' conduct, Eat Well suffered damages, including but not limited to: (a.) the loss of $8,500,000 worth of TRxADE Health common stock; (b.) the loss of substantial dividend income from special cash dividends declared on March 6, 2024, and July 9, 2024; (c.) the deprivation of shareholder rights associated with TRxADE Health common stock, including voting rights and participation in corporate governance; (d.) financial losses due to the diminished value and rights of the preferred stock improperly issued (e.) the loss of its right to sell its allotment of TRxADE Health common shares on the open market; and (f.) damages associated with additional debt servicing obligations that Eat Well unnecessarily incurred due to Defendants' acts and omissions. Defendant's actions were willful, malicious, and in conscious disregard of Eat Well's rights.

153. Defendants acted willfully and maliciously, with full knowledge that their actions would harm Eat Well and benefit themselves. Their reckless disregard for Eat Well's rights justifies an award of punitive damages.

**COUNT 10**
**Civil Conspiracy (Breach of Fiduciary Duty)**
**Against the TRxADE Board**
**Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson**

154. Plaintiff repeats and re-alleges every allegation set forth in paragraphs 1-66, as if fully set forth herein.

155. This is a claim for civil conspiracy against Defendants Patel, Hariharan, Mani, Fell,

Doshi, Jayanthi, Newell, and Peterson, based on their knowing participation in a coordinated effort to assist Suren Ajjarapu in breaching his fiduciary duties owed to Eat Well.

156. As CEO and Chairman of the Board, Ajjarapu owed fiduciary duties of loyalty, care, and good faith to Eat Well, which arose from TRxADE Health's contractual obligations under the Membership Interest Purchase Agreement (MIPA) and Eat Well's status as a preferred shareholder entitled to receive TRxADE Health common stock and its associated rights and benefits.

157. Ajjarapu breached these fiduciary duties by delaying the issuance of common stock to Eat Well, excluding Eat Well from the special cash dividends declared on March 6, 2024, and July 9, 2024, and orchestrating actions designed to enrich himself and the TRxADE Board members at Eat Well's expense.

158. Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson knew of Ajjarapu's fiduciary duties to Eat Well and knowingly participated in his breaches by conspiring with him to exclude Eat Well from the special cash dividends and other shareholder benefits. Their participation included:

a. Voting to approve the March 6, 2024, and July 9, 2024 special cash dividends, knowing that Eat Well was improperly excluded.

b. Failing to take steps to ensure that Eat Well received the common stock it was entitled to, despite their knowledge of TRxADE Health's obligations under the MIPA.

c. Supporting or remaining silent about corporate actions designed to delay and deny Eat Well's rights as a shareholder.

d. Personally benefiting as shareholders by receiving substantial dividends from the special cash distributions funded by proceeds of TRxADE Health's Florida-based assets and operations.

159. By knowingly assisting and encouraging Ajjarapu's breaches of fiduciary duty, Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson acted in concert with him and became liable as co-conspirators under Florida law.

160. The acts of these Defendants were part of a coordinated scheme to deprive Eat Well of its rightful shareholder benefits, including but not limited to: (a) the $8,500,000 worth of TRxADE Health common stock that should have been issued to Eat Well; (b) substantial dividend income from the March 6, 2024, and July 9, 2024 special cash dividends; (c) voting rights and participation in TRxADE Health's corporate governance; (d) the ability to sell common shares on the open market, including during periods of favorable stock prices.

161. As a direct and proximate result of Defendants' participation in the conspiracy, Eat Well suffered damages, including financial losses and the deprivation of its shareholder rights.

162. Defendants acted willfully and maliciously, with full knowledge that their actions would harm Eat Well. Their conduct was designed to unjustly enrich themselves and other Board members at Eat Well's expense.

163. Eat Well is entitled to compensatory damages, punitive damages, and all other relief this Court deems just and proper as a result of the Defendants' conspiracy to breach fiduciary duties.

**COUNT 11**
**(Breach of Contract against Superlatus)**

164. Plaintiff repeats and re-alleges every allegation set forth in paragraphs 1-66, as if fully set forth herein.

165. On or about June 2023, Eat Well and Superlatus, Inc. entered into a Membership

Interest Purchase Agreement ("MIPA"), under which Superlatus agreed to purchase Eat Well's wholly-owned subsidiary, Sapientia Technology Inc.

166. Under the terms of the MIPA, Superlatus agreed to pay Eat Well an aggregate purchase price of $10,000,000 (the "Purchase Price"), consisting of:

a. Cash Payment of $1,500,000, comprising:

   i. $350,000 in cash, payable no later than 21 business days after the closing ("Closing"); and

   ii. A secured debenture in the principal amount of $1,150,000 (the "Debenture");

b. $8,500,000 worth of common stock in TRxADE Health (the "Shares"), with the share value to be set on the date of the closing of the merger between Superlatus and TRxADE Health (the "Public Closing").

167. The MIPA stipulated that the Shares were to be held in escrow and released to Eat Well after 12 months to comply with applicable securities laws and regulations.

168. The Debenture was to accrue interest at a rate of 12% per annum, compounded monthly, starting 90 days after the Closing, and was to mature on December 31, 2023.

169. Eat Well fulfilled all of its obligations under the MIPA.

170. Despite Eat Well's full performance, Superlatus breached the MIPA by failing to perform its contractual obligations, including but not limited to:

a. Superlatus did not pay the $350,000 in cash within the specified time frame of 21 business days after Closing.

b. Superlatus did not issue or deliver the secured Debenture in the principal

amount of $1,150,000 to Eat Well.

c. Superlatus failed to issue or cause to be issued to Eat Well the $8,500,000 worth of TRxADE Health common stock as required under the MIPA.

d. Superlatus did not ensure that the Shares were held in escrow and released to Eat Well after the requisite period.

171. Superlatus's failures to perform these obligations constitute material breaches of the MIPA.

172. As a direct and proximate result of Superlatus's breaches of the MIPA, Eat Well has suffered and continues to suffer damages, including but not limited to: a. loss of the $350,000 cash payment due at Closing; b. loss of the $1,150,000 principal amount of the Debenture, plus accrued interest; c. loss of $8,500,000 worth of TRxADE Health common stock, including any appreciation in value; d. deprivation of dividends, voting rights, and other benefits associated with ownership of the TRxADE Health common stock; e. additional financial losses resulting from Superlatus's breaches, including lost business opportunities and costs incurred.

173. Eat Well has been damaged in an amount to be proven at trial, but not less than $10,000,000, plus interest and other damages as allowed by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Eat Well Investment Group, Inc. demands judgment against Defendants, as follows:

1. Compensatory damages in an amount to be determined at trial, including:

    a. The value of $8,500,000 worth of TRxADE Health common stock;

    b. The amount of dividends Eat Well would have received as a common shareholder;

c. damages associated with Eat Well's loss of its right to sell its allotment of TRxADE Health common shares on the open market, during times of favorable stock prices;

d. damages associated with the additional debt servicing obligations that Eat Well incurred due to Defendants' acts and omissions.

e. Damages associated with Superlatus's breach of the MIPA.

f. Additional damages resulting from the loss of shareholder rights.

2. Punitive damages in an amount sufficient to punish Defendants and deter similar conduct.

3. Pre- and post-judgment interest as allowed by law.

4. Attorneys' fees and costs incurred in this action.

5. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues herein triable as of right by jury.

Respectfully submitted on this 6th day of January, 2025:

*/s/ Casey R. Ingels*
Casey Ingels, Esq., WSBA #32981
*Request for Special Admission Pending*
DU WORS INGELS
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
Direct (253) 341-0252
Email: Casey@duworslaw.com