**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EAT WELL INVESTMENT GROUP INC.,

Plaintiff,

v.

TRxADE HEALTH, INC. n/k/a SCIENTURE HOLDINGS, INC.; SUPERLATUS, INC., SUREN AJJARAPU, PRASHANT PATEL, SHANKAR HARIHARAN, NARASIMHAN MANI, DONALD FELL, MAYUR DOSHI, SUBBARAO JAYANTHI, JEFF NEWELL, MICHAEL L. PETERSON

Defendants.

Case No: 8:25-cv-35-KKM-AEP

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Eat Well Investment Group, Inc ("Eat Well") files this Second Amended Complaint against Defendants TRxADE Health, Inc. n/k/a Scienture Holdings, Inc., Superlatus, Inc, Suren Ajjarapu, Prashant Patel, Shankar Hariharan, Narasimhan Mani, Donald Fell, Mayur Doshi, Subbarao Jayanthi, Jeff Newell, and Michael L. Peterson, and alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff Eat Well Investment Group Inc. ("Eat Well") is a Canadian company that owned 100% of Sapientia Technology, LLC —a food technology firm specializing in proprietary plant-based extrusion processes.

2. In June 2023, Eat Well sold Sapientia to Superlatus, Inc., a private food company based in the United States. The transaction was governed by a Membership

Interest Purchase Agreement (the "MIPA"), under which Eat Well was entitled to a mix of consideration: $350,000 in cash, a $1.15 million secured debenture, and $8.5 million in common stock.

3. But the parties never intended for Eat Well to hold private company shares. The MIPA expressly contemplated that Superlatus would soon be acquired by a publicly traded company—and that Eat Well's equity would be provided in the form of publicly tradedable stock. as part of that merger.

4. At the time the MIPA was executed, the public merger was already in motion. Superlatus was preparing to merge with a subsidiary of TRxADE Health, Inc. ("TRxADE"), a NASDAQ-listed company now known as Scienture Holdings, Inc. The MIPA required the Sapientia transaction to close simultaneously with that merger.

5. In July 2023, TRxADE completed a reverse merger with Superlatus. Under the Amended Merger Agreement, all Superlatus common stock outstanding before the merger was cancelled and converted into equity in TRxADE—a mix of common stock and convertible preferred shares.

6. TRxADE walked away from this deal with everything of value—Sapientia's proprietary food technology, intellectual property, and operational assets—while Eat Well received none of what it bargained for. Instead of the common stock it was promised, Eat Well was issued Series B Preferred Shares that offered no voting rights, paid no dividends, carried no liquidation preference, and were not convertible unless TRxADE's shareholders approved a future vote. That vote never happened. The shares lacked every meaningful attribute of typical preferred shares and failed to deliver any of

the economic value that Eat Well was promised.

7. TRxADE's CEO, Surendra Ajjarapu, controlled the merger and shareholder process. For months, Ajjarapu strung Eat Well along with shifting explanations as to when Eat Well's preferred shares would be converted. He claimed the company was waiting on regulatory approvals and told Eat Well that conversion of its preferred shares could not proceed until TRxADE's financial audits were complete.

8. Ajjarapu even enlisted Eat Well's assistance to help TRxADE's auditors finalize those audits—further delaying conversion. Eat Well cooperated. But once the audits were done, Ajjarapu still refused to call a shareholder vote or take any steps to convert Eat Well's shares.

9. In hindsight, the strategy was obvious: stall the conversion long enough to keep Eat Well from participating in the upcoming special dividends. TRxADE's Board then declared two large special cash dividends—an $8.00 per share dividend in March 2024, and a $1.50 per share dividend in July 2024. Eat Well, locked in a restricted class with no dividend rights, received nothing.

10. Meanwhile, neither TRxADE, nor its subsidiary (Superlatus), paid the $1.15 million debenture or the $350,000 in cash TRxADE assumed. Instead, in March 2024—less than a year after acquiring Sapientia—TRxADE quietly sold Superlatus to a newly formed shell company for just $1. The transaction was disclosed without explanation. No rationale was offered for how a company holding Eat Well's proprietary food IP, previously valued at $10 million, had become worthless in a matter of months.

11. That sale followed months of public acknowledgment by TRxADE's CEO

that Eat Well was still owed material consideration under the MIPA. Yet after disposing of Superlatus, TRxADE disclaimed any remaining obligation to Eat Well.

12. In the end, Eat Well delivered a $10 million food technology business in a transaction explicitly tied to a public merger. Eat Well was supposed to receive tradable equity in a public company. Instead, it received only illiquid, non-convertible preferred shares, and was denied every material part of the bargain.

## THE PARTIES

13. Eat Well is a Canadian company with its headquarters in Vancouver, British Columbia. Eat Well is in the business of processing, distributing and marketing sustainable, plant-based foods. With a rich history spanning nearly 45 years, Eat Well and its subsidiaries have been at the forefront of developing premium-quality plant-based foods.

14. Suren Ajjarapu ("Ajjarapu"), at all times material hereto, has been a citizen of Florida and has served as the Chief Executive Officer of TRxADE and as Chairman of the company's Board of Directors.

15. TRxADE Health, Inc. n/k/a Scienture Holdings, Inc., is a Delaware corporation, headquartered in Lutz, Florida. Prior to its merger with Superlatus, TRxADE was primarily a health services IT company focused on digitalizing the retail pharmacy experience by optimizing drug procurement, the prescription journey, and patient engagement in the U.S. In September 2024, TRxADE Health, Inc. announced that it changed its name and ticker symbol to "Scienture Holdings, Inc." and "SCNX", respectively, and that the business would continue as a NASDAQ-listed company.

16. Superlatus, Inc. is a Delaware corporation, headquartered in New York. Superlatus is a self-described diversified food technology company that claims to provide food processing and forming technologies that create high nutrition, high taste, and textured foods.

17. Prashant Patel ("Patel") is a citizen of Florida and served as a member of the Board of Directors of TRxADE during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Patel conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

18. Shankar Hariharan, Ph.D. ("Hariharan") is a citizen of New York, and served as a member of the Board of Directors of TRxADE during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Hariharan conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

19. Donald Fell ("Fell") is a citizen of Florida, served as a member of the Board of Directors of TRxADE during the approval of both the March 6, 2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Fell conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

20. Subbarao Jayanthi ("Jayanthi") is a citizen of New Jersey and served as a member of the Board of Directors of TRxADE during the approval of both the March 6,

2024 and July 9, 2024 special cash dividends that wrongfully excluded Eat Well from participation. Jayanthi conspired with and assisted Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve both dividends, furthering the scheme to harm and exclude Eat Well.

21. Narasimhan Mani, Ph.D. ("Mani") is a citizen of New Jersey and joined the Board of Directors of TRxADE on May 28, 2024. Mani conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by approving the July 9, 2024 special cash dividend.

22. Mayur Doshi ("Doshi") is a citizen of New Jersey and joined the Board of Directors of TRxADE on May 28, 2024. Doshi conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by approving the July 9, 2024 special cash dividend.

23. Jeff Newell ("Newell") is a citizen of Rhode Island and served as a member of the Board of Directors of TRxADE until his voluntary resignation on May 30, 2024. While serving on the Board, Newell conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve the March 6, 2024 special cash dividend. This dividend improperly excluded Eat Well from participation, depriving it of its rightful shareholder benefits.

24. Michael L. Peterson ("Peterson") is a citizen of Utah and served as a member of the Board of Directors of TRxADE until his voluntary resignation on May 30, 2024. While serving on the Board, Peterson conspired with and assisted Suren Ajjarapu in breaching his fiduciary duties to Eat Well by voting to approve the March 6, 2024

special cash dividend. Peterson's actions knowingly furthered a conspiracy to exclude Eat Well from its rightful participation in the dividend, causing significant harm.

## JURISDICTION AND VENUE

25. Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this action because there is complete diversity of citizenship between Eat Well and the Defendants, and the amount in controversy is greater than $75,000, exclusive of interest and costs. Eat Well is a corporate citizen of Vancouver, British Columbia, Canada, and Defendants are citizens of Florida, New Jersey, New York, Rhode Island and Utah.

26. This Court has personal jurisdiction over Defendants Ajjarapu, Patel, and TRxADE, who are all citizens of Florida.

27. This Court has personal jurisdiction over Defendant Superlatus under Florida's long-arm statute (Fla. Stat. § 48.193(1)(a)(2)) because its actions in furtherance of a conspiracy with co-defendants caused tortious injury to Eat Well in Florida. Although Superlatus is not a citizen of Florida, its participation in a coordinated scheme to defraud Eat Well and breach fiduciary duties subjects it to jurisdiction in this state.

28. Superlatus, acting in concert with Florida citizen Suren Ajjarapu, conspired to commit fraud and facilitate breaches of the fiduciary duties Ajjarapu owed to Eat Well. Ajjarapu's tortious acts, including delaying stock issuance and improperly declaring cash dividends in Florida, were part of the scheme orchestrated by Ajjarapu to deprive Eat Well of its rightful shareholder benefits.

29. This Court also has personal jurisdiction over the nonresident Board

Members[1]— Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson—under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(2), because each committed tortious acts that caused injury in Florida. As directors of a Florida-based corporation, they knowingly participated in corporate decisions that were conceived, approved, and executed in Florida, including the issuance of preferred shares to Eat Well in place of contractually required common stock, the obstruction of Eat Well's conversion rights, and the declaration of two Florida-based cash dividends from which Eat Well was deliberately excluded. These actions were not passive or incidental. Each Board Member voted on or facilitated conduct that breached contractual and fiduciary duties owed to Eat Well and directly enriched themselves as TRxADE shareholders. Their participation in these Florida-centered corporate acts, which caused foreseeable harm to Eat Well and conferred financial benefit upon themselves, subjects them to jurisdiction under Florida's long-arm statute.

30. In addition, the TRxADE Board, which includes Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson, conspired with Ajjarapu to breach the fiduciary duties Ajjarapu owed to Eat Well by (1) knowingly approving the issuance of preferred stock to Eat Well rather than the TRxADE common stock required under the MIPA and related merger documents, and (2) approving the March 6, 2024 and

[1] As used herein, the term "Board" or "TRxADE Board" refers to the Board of Directors of TRxADE Health, Inc., and the term "Board Members" refers collectively to Defendants Prashant Patel, Prakash Hariharan, Jayachandra Mani, Jim Fell, Bharat Doshi, Ramesh Jayanthi, Gary Newell, and Jason Peterson—who served as directors of TRxADE and participated in the decisions and conduct giving rise to these claims.

July 9, 2024 special cash dividends that excluded Eat Well from participation as a shareholder. Each board member knowingly acted in concert with Ajjarapu, facilitating a scheme to deprive Eat Well of its rights and financial benefits while personally profiting from the dividends. The TRxADE Board actively participated in board meetings, discussions, and votes that directly advanced the scheme, thereby furthering Ajjarapu's breaches of fiduciary duty.

31. The TRxADE Board knowingly engaged in concerted actions with Ajjarapu, a Florida resident, to facilitate breaches of fiduciary duty that harmed Eat Well and enriched the board members at its expense. By working with Ajjarapu, the board members availed themselves of Florida's jurisdiction through their participation in corporate decisions and actions that emanated from Florida, including declaring and paying the special cash dividends, which were funded from proceeds derived from Florida-based corporate assets and operations. The dividends were declared and paid by TRxADE, a Florida-based company, and were intended to enrich the board members, including themselves as shareholders, while depriving Eat Well of its rightful benefits as a shareholder.

32. In furtherance of this conspiracy, Ajjarapu and the Board Members also engaged in coordinated actions that affected Eat Well's financial interests in Florida. These actions included (i) deliberately issuing TRxADE preferred stock instead of the promised common stock; (ii) delaying the conversion of Eat Well's shares to ensure Eat Well's exclusion from substantial dividends declared and paid in Florida; and (iii) facilitating the sham sale of Superlatus, in Florida, to shield obligations owed to Eat Well.

33. Under Florida law, each conspirator is liable for the actions of other members of the conspiracy, even if the nonresident conspirator did not personally perform the tortious act within the state. By conspiring with Ajjarapu, a Florida resident, and benefiting from tortious acts committed in Florida, the Board Members are subject to this Court's jurisdiction pursuant to Florida Statute § 48.193(1)(a)(2).

**GENERAL ALLEGATIONS**

**MIPA dated June 16, 2023**

34. On June 16, 2023, Eat Well and Superlatus executed a Membership Interest Purchase Agreement (the "MIPA") under which Eat Well sold 100% of its membership interest in Sapientia Technology, LLC ("Sapientia") to Superlatus. A true and correct copy of the MIPA is attached as ***Exhibit A.***

35. The agreed purchase price was $10 million, consisting of (i) $350,000 in cash, (ii) a $1.15 million secured debenture, and (iii) $8.5 million in Superlatus common stock. The MIPA expressly valued the equity component as "common stock in [Superlatus]… in an amount valued at $8,500,000.00 (the Shares), which share value shall be set on the date of the closing of the Public Closing."

36. The MIPA made clear that this equity was not to be held in a private company. Instead, the agreement tied the MIPA closing directly to a concurrent public merger, stating: "Simultaneously with the Closing… [Superlatus] will be merged with a public company and the Shares of [Superlatus] shall become public shares (the 'Public Closing')." (MIPA, Recitals.)

37. Section 2.05 of the MIPA further confirmed that the Sapientia sale was to

occur concurrently with a planned merger involving TRxADE: "The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date. For purposes of clarity, it is intended that the Closing occur simultaneously with the Public Closing." (MIPA § 2.05.)

38. The structure of the MIPA left no room for Eat Well to receive anything other than common stock in a publicly traded company. There is no provision permitting the substitution of preferred shares, and the agreement expressly contemplated that the stock would become publicly tradable.

39. Section 2.02(b) of the MIPA outlined an escrow release schedule designed to comply with NASDAQ and securities law requirements. These references confirmed the parties' shared expectation that Eat Well would receive publicly traded equity, that would allow Eat Well to sell those shares on the open market following the closing of a merger between Superlatus and a public company.

40. Section 2.02(b) of the MIPA provided that 80% of the equity consideration owed to Eat Well—would be released from escrow based on a volume-weighted average price (VWAP) calculation following the "Public Closing." Specifically, the MIPA stated that the release of these shares would be "based on a 20-day VWAP. All shares shall become free trading upon release. If after the Closing and for a period of six months thereafter the Buyer issues additional capital stock, then the Buyer shall take all necessary steps to ensure that the Seller is not diluted."

41. This VWAP-based mechanism reflected a negotiated agreement that Eat Well's consideration would be tied to the public market value of TRxADE. By anchoring

the equity release to the trading price of a public company, the parties ensured that Eat Well would receive a market-based valuation of the shares it was entitled to receive. That structure was designed to protect Eat Well's ability to realize the benefit of its bargain by receiving tradable public shares—not illiquid or unconvertible preferred stock.

42. The structure also confirmed the parties' shared understanding that the "Purchaser Shares" referenced in Section 2.02(b) meant TRxADE common stock. Superlatus was not a public company, had no listed securities, and had no shares whose price could be measured using a VWAP. The only public company involved in the deal structure was TRxADE, which, by the time of closing, was the entity into which Superlatus had merged. As a result, TRxADE—and only TRxADE—was in a position to satisfy the obligations set forth in Section 2.02(b).

43. TRxADE's own conduct confirms that TRxADE understood that it—not Superlatus—had the obligation to deliver the consideration owed under the MIPA. Days after the merger closed, on or about August 4, 2023, TRxADE issued Eat Well 11,643.84 shares of Series B Preferred Stock—a class of convertible TRxADE securities. While Eat Well disputes that preferred shares satisfied the equity component required under the MIPA, their issuance by TRxADE—not Superlatus—demonstrates that TRxADE acknowledged its role as the entity responsible for delivering that consideration.

44. The Series B Preferred Stock issued to Eat Well was "preferred" in name only. Unlike traditional preferred shares, it carried no dividend rights, no liquidation preference, no voting power, and no redemption rights. Its only theoretical benefit—conversion into common stock—was illusory, because conversion required a shareholder

vote that TRxADE refused to schedule. In substance, these shares functioned as locked-up, illiquid equity with none of the protections or privileges that typically justify a preferred classification. Eat Well did not bargain for and never agreed to receive such shares in exchange for its $10 million sale of Sapentia.

**Amended and Restated Merger Agreement**

45. On July 14, 2023, TRxADE—later renamed Scienture Holdings, Inc.—entered into an Amended and Restated Agreement and Plan of Merger with Superlatus, Inc. and Foods Merger Sub, Inc., a wholly owned subsidiary of TRxADE[2].

46. The Amended Merger Agreement was not a standalone deal. It was the executional counterpart to the MIPA, designed to finalize the go-public transaction that was central to Eat Well's sale of Sapientia. This merger, consummated through TRxADE's acquisition of Superlatus, was the "Public Closing" referenced throughout the MIPA. The two agreements were structurally and substantively linked. The merger enabled Superlatus to deliver the equity Eat Well bargained for, and TRxADE's role as the public acquirer placed it in Superlatus's shoes with respect to those obligations.

47. Under the merger structure, Foods Merger Sub, Inc. (a TRxADE subsidiary) merged with and into Superlatus, with Superlatus surviving as a wholly owned subsidiary of TRxADE. This transaction constituted the "Public Closing" referenced in the MIPA.

[2] The Amended Merger Agreement was filed with the U.S. Securities and Exchange Commission and a copy is available at: https://www.sec.gov/Archives/edgar/data/1382574/000149315223024613/ex2-1.htm

48. The Merger Agreement required that all Superlatus common stock be canceled and converted into equity in TRxADE. Section 2.6(iii) of the agreement provides that:

> The Company's shareholders shall be entitled to an aggregate of 30,821,941 shares of MEDS Common Stock at $7.30 per share, which is comprised of (i) 136,441 shares of MEDS Common Stock, representing 19.99% of the total issued and outstanding MEDS Common Stock at Closing, and (ii) 306,855 shares issued as a new class of MEDS non-voting convertible preferred stock with a conversion ratio of 100.

49. This structure resulted in a total merger consideration equivalent to 30,821,941 shares of TRxADE common stock: 136,441 shares issued directly as common stock and 306,855 shares of convertible preferred stock, each convertible into 100 shares of common shares.

50. Section 2.6(a) confirms that "each Company Common Share issued and outstanding immediately prior to the Effective Time shall be automatically cancelled and converted into the right to receive the Merger Consideration." The agreement does not distinguish among Superlatus common shareholders, nor does it provide that any shareholder would receive only preferred shares while others would receive common stock.

51. To the contrary, the language is inclusive and collective: "the Company's shareholders shall be entitled to" the full Merger Consideration. Absent an express allocation or exclusion, shareholders of the same class—here, Superlatus common

shareholders—must be treated equally – which they were not.

52. Upon the closing of the merger, all shares of Superlatus common stock were automatically surrendered and cancelled. Superlatus stock ceased to exist as a tradable, transferrable or enforceable interest. It was replaced, by contract and by operation of law, with equity in TRxADE. As a result, any party—such as Eat Well—entitled to receive Superlatus common stock prior to the merger became entitled to a share of the TRxADE common stock issued as Merger Consideration.

53. Moreover, the merger was not structured in a vacuum. Section 8.7 of the Amended Merger Agreement makes the Sapientia acquisition (from Eat Well) a condition of closing. It provided:

> Unless waived by MEDS [TRxADE], the Company [Superlatus] shall have closed its membership interest purchase agreement with Sapientia Technology, LLC either before or simultaneously with the Closing. The Company shall provide access to all legal and financial information as requested by MEDS related to this transaction and will not sign any definitive agreements in connection therewith without the prior approval and input of MEDS and its counsel. (Merger Agreement § 8.7.)

54. These provisions confirm three things. First, the Sapientia acquisition was a condition to closing the merger. Second, TRxADE directly supervised and approved the Sapientia transaction, including its structure and equity terms. And third, Eat Well's equity interest was known to TRxADE and factored into the transaction before the merger closed.

55. And TRxADE did not merely approve the Sapientia acquisition as a closing

condition—it publicly promoted the acquisition as a transformative part of the merger.

56. In a June 23, 2023 press release announcing the merger, TRxADE described Sapientia as "a food tech business led by Dr. Eugenio Bortone, one of the world's most preeminent food scientists, extrusion processing experts, and inventor of Frito-Lay's Twisted Cheetos." A true and correct copy of that press release is attached as ***Exhibit B***. TRxADE emphasized that Sapientia had "created and filed four foundational patents revolving around the 'protein curl' and crispy puff style snack," and claimed that its "disruptive patents solve one of the major problems large-scale snack-food companies have struggled with for years," including texture, flavor, and health characteristics. *Id*. TRxADE further projected that the newly merged entity would pivot toward "high nutrition, high taste and texture plant-based foods and snacks," and that Sapientia's technology would position TRxADE to "unlock significant value and synergies." *Id*.

57. These public statements confirm that TRxADE not only approved the Sapientia transaction—it celebrated it as a core asset and publicly touted its value to justify the merger. Yet after acquiring the Sapentia and its valuable IP, TRxADE denied Eat Well the consideration it was promised in exchange.

58. On July 31, 2023, TRxADE publicly announced the closing of the merger with Superlatus. In a press release, TRxADE confirmed that Superlatus shareholders received both common and preferred stock based on "such shareholder's pro rata percentage ownership" – which was patently false. A true and correct copy of that press release is attached as ***Exhibit C.***

59. Despite this, and just days later (on August 4, 2023), TRxADE issued Eat

Well only restricted preferred shares—non-voting, non-dividend, and non-convertible without shareholder approval—while other shareholders received common stock only, or a mix of common and preferred stock - and thus gained access to dividends and the ability to sell those shares on the open market.

**Amendment No. 1 to the Amended and Restated Merger Agreement**

60. In January 2024—approximately six months after the merger closed—TRxADE entered into Amendment No. 1 to the Amended and Restated Agreement and Plan of Merger ("Amendment No. 1")[3].

61. Amendment No. 1 arose after Superlatus failed to complete the post-closing acquisition of a third party - Prestige Farms, Inc.—which was a required condition under the Amended Merger Agreement. To address that failure, the parties entered into Amendment No. 1, under which Superlatus agreed to return 289,731 shares of previously issued Series B Preferred Stock. The common stock portion of the merger consideration—136,441 shares of TRxADE common stock —remained unchanged.

62. Critically, in entering Amendment No. 1, TRxADE specifically represented that the return of those shares would not impair Superlatus's ability to meet its contractual obligations to Eat Well under the Sapientia acquisition. Specifically, Amendment No. 1 states:

> "Notwithstanding anything to the contrary herein, the Company hereby represents and warrants that surrender of

[3] https://content.edgar-online.com/ExternalLink/EDGAR/0001493152-24-002099.html?hash=df3dba8ee5ea585ae0e5092ec8e671158fa6c8c8dc3e9a625a54605e6ab7db03&dest=ex10-1_htm#ex10-1_htm

> shares provided herein shall not cause Superlatus to default on its obligations to Sapientia and that to the extent the surrender of shares provided herein affects Superlatus' obligations under the purchase agreement for the purchase of Sapientia, the Company shall issue a sufficient number of shares to allow Superlatus to comply with such obligations under the purchase of Sapientia."
> (Amendment No. 1, § 3)

63. TRxADE expressly assumed responsibility for ensuring Superlatus's compliance with its obligations under the MIPA. On January 8, 2024, TRxADE filed a Form 8-K with the Securities and Exchange Commission, signed by CEO Surendra Ajjarapu, attaching Amendment No. 1 as a Material Definitive Agreement under applicable SEC rules. By executing and filing the amendment, TRxADE not only made material representations about Superlatus's remaining obligations, but TRxADE affirmatively committed to issue additional equity if needed to satisfy those obligations. The filing confirms that TRxADE understood it bore ultimate responsibility for fulfilling Superlatus's contractual commitments to Eat Well under the MIPA.

64. Amendment No. 1 also implicitly acknowledged that the 11,643.84 Series B Preferred Shares previously issued to Eat Well did not fully satisfy the obligations owed to Eat Well under the MIPA. If TRxADE and Superlatus believed Eat Well had already received its full allotment of equity and other consideration, there would have been no need to include the representation and warranty in Section 3 of Amendment No. 1. That clause only makes sense if TRxADE recognized that further consideration —beyond what had already been issued—was necessary to meet Superlatus's obligations to Eat Well under the MIPA.

65. Moreover, TRxADE's express commitment in Amendment No. 1 to issue "a sufficient number of shares to allow Superlatus to comply" with its MIPA obligations demonstrates that TRxADE saw itself as responsible for fulfilling those obligations.

66. The structure and language of Amendment No. 1 undercuts any assertion that the issuance of Series B Preferred Shares in October 2023 fully discharged TRxADE's obligations under the MIPA. If those preferred shares had satisfied the deal consideration, TRxADE would have had no reason to bind itself to issue "a sufficient number" of additional shares in January 2024. By agreeing to do so, TRxADE correctly acknowledged both (1) that it stood in the shoes of Superlatus for purposes of MIPA compliance, and (2) that Eat Well's equity consideration remained incomplete.

67. This admission is especially significant because Amendment No. 1 was entered into after the Series B shares had already been issued to Eat Well. TRxADE's post-issuance commitment confirms what the contemporaneous facts and deal structure already show: Eat Well was entitled to receive a greater quantity—and quality—of equity, including publicly traded common stock, and TRxADE knew it.

**TRxADE's CEO Confirms the Amounts Owed to Eat Well Post-Merger**

68. In January 2024, during the course of its annual financial audit, TRxADE was required to confirm its outstanding obligations to Eat Well relating to the Sapientia acquisition. TRxADE's auditors, CM3 Advisory, sent multiple audit confirmation letters to TRxADE, requesting verification of amounts payable as of December 31, 2023

69. On January 24, 2024, TRxADE's CEO, Surendra Ajjarapu, signed a confirmation letter addressed to Eat Well. A true and correct copy of that letter is attached

as ***Exhibit D.*** In that letter, Ajjarapu, as CEO of TRxADE confirmed that Eat Well was owed: (i) $350,000 in unpaid cash consideration, and (ii) $1.15 million in principal on a secured debenture, issued in connection with the Sapientia purchase. Ajjarapu confirmed that both balances remained unpaid as of year-end, and that no interest had been paid. The letter was signed by Ajjarapu in his capacity as CEO of TRxADE and transmitted to TRxADE's auditors.

70. The audit letter also listed the maturity dates for the two debts: August 29, 2023 for the $350,000 cash note, and December 31, 2023 for the $1.15 million debenture, which carried an interest rate of 12.00% per annum.

71. In addition to the confirmed $1.15 million debenture and $350,000 cash obligation described above, TRxADE also acknowledged a separate set of obligations owed to Eat Well in a January 29, 2024 audit confirmation signed by CEO Surendra Ajjarapu. A true and correct copy of that letter is attached as ***Exhibit E.*** In that letter—Ajjarapu confirmed that Eat Well was owed a total of $755,000 in unpaid principal across ten different promissory notes, each with stated maturity dates ranging from August 2023 to February 2025. The notes originated between 2021 and 2023 and remained unpaid in full as of December 31, 2023.

72. TRxADE also disclosed the debt owed to Eat Well in its March 31, 2024 Form 10-Q[4] filed with the U.S. Securities and Exchange Commission. In Note 11 (Notes

[4] https://www.sec.gov/Archives/edgar/data/1382574/000149315224025217/form10-q.htm

Payable), the Company acknowledged that as part of its Superlatus acquisition, "the Company [TRxADE] issued a secured debenture to Eat Well Investment Group, Inc. (the "Eat Well June 2023 Note") in the amount of $1,150,000 for the purchase of Sapientia, a wholly-owned subsidiary of Superlatus … The Eat Well June 2023 Note began accruing interest at 12% per annum, compounded monthly, as of October 31, 2023. The Eat Well June 2023 Note matured on December 31, 2023. As of December 31, 2023, the balance of the Eat Well June 2023 Note was $1,150,000."

**TRxADE's Post-Merger Obstruction and Self-Dealing**

73. As noted above, on August 4, 2023, TRxADE issued Eat Well 11,643.84 shares of Series B Preferred Stock. It issued no common stock, and no pro rata allocation of the full merger consideration as set forth in the Amended Merger Agreement. The preferred shares were non-voting, non-dividend-bearing, and not convertible unless and until TRxADE's shareholders approved a conversion vote—a vote TRxADE refused to call.

74. Almost immediately, Eat Well began requesting the conversion of its preferred shares into common stock. Had conversion taken place in a timely manner, Eat Well would have realized most, if not all, of the equity consideration contemplated under the MIPA.

75. In a September 6 2023 email, TRxADE CEO Surendra Ajjarapu falsely claimed that the Company was "waiting on SEC approval to get this meeting going," referring to the shareholder vote Ajjarapu represented was required to convert Eat Well's shares. A true and correct copy of that email is attached as ***Exhibit F.***

76. Over the next several months, Ajjarapu and the Board Members continued to intentionally delay. They refused to place the conversion vote on the agenda for TRxADE's annual meeting or to call a special meeting for that purpose. While Ajjarapu referenced the need for a proxy statement and pending audits, he took no concrete steps to initiate the shareholder approval process. Eat Well followed up repeatedly. TRxADE responded with silence, excuses, or shifting pretexts—all while blocking Eat Well from obtaining the common shares to which it was entitled.

77. As noted above, in January 2024, Ajjarapu, on behalf of TRxADE, sent multiple audit confirmation letters to Eat Well, confirming that Eat Well was owed the $1.15 million debenture, $350,000 in cash, and $750,000 in other promissory notes. See ***Exhibits D and E.***

78. Less than one month later, in February 2024, TRxADE completed the sale of a core operating asset—its health services technology platform—to Micro Merchant Systems, Inc. for $22.5 million in cash, with an additional $7.5 million earn-out tied to performance over the next four months[5].

79. TRxADE's $22.5 million asset sale created a windfall—and an additional motive. With Eat Well's preferred shares still unconverted, TRxADE's insiders stood to reap extraordinary profits by declaring a dividend and excluding Eat Well from participation.

80. Ajjarapu and the Board knew that Eat Well was not only owed significant

[5] https://www.sec.gov/Archives/edgar/data/1382574/000149315224007038/ex2-1.htm

outstanding debt under the MIPA—including the $1.15 million secured debenture and $350,000 in cash consideration—but also entitled to receive millions of dollars in TRxADE common stock as part of the merger consideration. TRxADE had already agreed in Amendment No. 1 to "issue a sufficient number of shares to allow Superlatus to comply" with its obligations under the MIPA.

81. Rather than fulfill these obligations, Ajjarapu and the Board took the opposite course. On March 5, 2024—just six weeks after confirming the debt to Eat Well and just *one day before* announcing an $8.00 per share dividend—TRxADE sold Superlatus, which owned Sapientia, for one dollar ($1) to a newly formed shell company, "Superlatus Foods, Inc."[6] The transaction was executed by Ajjarapu, in his capacity as CEO of TRxADE. Aside from the one-dollar sale price, no other consideration was disclosed.

82. Superlatus Foods, Inc. was registered in Delaware shortly before the transaction. It had no known operations, employees, or assets prior to the transfer. It no longer appears to be a registered business and is no longer a going concern. No fairness opinion or valuation analysis was provided to shareholders or otherwise provided. Defendants made no effort to explain how Superlatus, which just months earlier had acquired Eat Well's valuable IP and food technology for $10 million, had suddenly become worthless.

83. This was not a legitimate business divestiture. Prior to the $1 sale, TRxADE

[6] https://www.sec.gov/Archives/edgar/data/1382574/000149315224008947/form8-k.htm

transferred Sapientia's key intellectual property and commercial rights—including the food-tech patents and related IP acquired from Eat Well—into other entities under TRxADE's control or the control of TRxADE insiders or their confederates. By the time of the sale, Superlatus no longer owned or controlled the valuable IP that had formed the basis of the $10 million Sapientia acquisition. TRxADE had quietly extracted that value for itself, then abandoned the empty corporate shell to a newly formed entity with no ability to satisfy the obligations owed to Eat Well.

84. And if Superlatus did somehow still own that valuable IP, then the $1 sale price confirms the transaction was not conducted at arm's length and was designed to hinder, delay, or defraud Eat Well as a known creditor.

85. TRxADE's motive was plain: to offload the entity that TRxADE executives—including Ajjarapu and the Board—believed to be solely liable to Eat Well, so that TRxADE could avoid delivering the equity and other consideration it promised. At the same time, this maneuver cleared the way for insider enrichment. By eliminating the possibility that Eat Well's preferred shares would convert prior to the record date, TRxADE ensured that insiders—including Ajjarapu and board member Prashant Patel, who together held over 25% of the Company's common stock—would receive the full benefit of the special dividends.

86. At all relevant times following the merger and during the sale of Superlatus, both entities were controlled by the same individuals—namely, TRxADE's CEO Surendra Ajjarapu and the Company's Board of Directors. TRxADE owned 100% of Superlatus's stock, and all material business decisions were made by or required

approval from TRxADE executives. Superlatus had no independent governance or capital structure, and all of its post-merger obligations, including communications with Eat Well, were carried out by TRxADE representatives. Emails came from TRxADE addresses, and relevant documents were signed by Ajjarapu in his TRxADE capacity.

87. On March 6, 2024—the day after the $1 sale—TRxADE's board then declared a special cash dividend of $8.00 per share of common stock, payable to shareholders of record as of March 18, 2024. At the time, two of TRxADE's largest shareholders included CEO Surendra Ajjarapu (14.94%) and board member Prashant Patel (12.56%), along with other directors and insiders. Together, these individuals controlled a substantial block of TRxADE common stock and stood to gain millions of dollars in personal profit from the dividend. That enrichment was possible only because Defendants deliberately withheld conversion from Eat Well, ensuring it would not be a common shareholder of record by the dividend date.

88. Eat Well immediately sought clarity. On March 7, 2024—just one day after TRxADE's dividend announcement—Eat Well emailed TRxADE's counsel, Andy Tucker (with a copy to Ajjarapu), seeking answers. The email was sent in reference to TRxADE's latest filings and press releases—specifically, the dividend announcement—and requested guidance as to whether the long-delayed conversion of Eat Well's preferred shares would now proceed. A true and correct copy of that email is attached as ***Exhibit G.***

89. On March 8, 2024, Tucker responded: "I don't have much to add. We still need the materials so TRxADE can complete its audit so that you can convert the

preferred shares." ***Exhibit G***. TRxADE still had not initiated any proxy process, and made no effort to schedule a shareholder vote.

90. Then, on March 15, 2024, just days before the March 18 dividend record date, Ajjarapu sent Eat Well an urgent request. He forwarded a lengthy email from TRxADE's auditors asking for detailed financial, operational, and historical information related to Sapientia and Superlatus—records for a company that TRxADE had already owned for months. The auditor's message made it clear that the materials were needed immediately to meet TRxADE's SEC filing deadlines. Ajjarapu asked Eat Well to assist, stating bluntly: "Please look into this otherwise further delays filing." A true and correct copy of that email is attached as ***Exhibit H.***

91. Ajjarapu's March 15 email was more than a simple request—it was an inducement for Eat Well to assist with an urgent SEC filing, Ajjarapu knowingly solicited Eat Well's help in advancing TRxADE's corporate objectives. At the time, Eat Well had repeatedly requested action on the conversion of its preferred shares, and TRxADE had made clear that conversion depended on the completion of the audit. Ajjarapu's email implied that Eat Well's cooperation would remove that final obstacle and it was intended to induce Eat Well to act and assist TRxADE's auditors. Eat Well reasonably relied on this inducement and contributed significant time and resources to support TRxADE's auditors.

92. Eat Well worked closely with TRxADE's auditors to compile the requested information. But TRxADE offered nothing in return. It took no action to initiate a conversion vote, made no effort to address the shareholder approval process, and refused

to even provide a timeline for Eat Well's conversion of its preferred shares.

93. TRxADE's delays and obstruction continued into the spring. On May 14, 2024, after the Company's auditors raised additional questions related to Sapientia, Ajjarapu again emailed Eat Well to request help. This time, he wrote: "Please do the needful at the earliest" [*sic*]. A true and correct copy of that email is attached as ***Exhibit I.*** Once more, Eat Well complied. Once more, TRxADE did nothing to honor its obligations.

94. On May 20, 2024, Eat Well followed up after learning that TRxADE had filed a new proxy statement. Eat Well asked whether that proxy statement was related to the long-promised shareholder vote that was needed to convert Eat Well's shares. Ajjarapu responded tersely: "That's not in the agenda." A true and correct copy of that email is attached as ***Exhibit J.***

95. Throughout the summer, Eat Well continued pressing for the conversion of its shares so that Eat Well could receive the common stock it was promised. On July 2, 2024, Ajjarapu again offered a non-answer: "When we file proxy will let you know." A true and correct copy of that email is attached as ***Exhibit K.*** At that point, nearly a year had passed since Eat Well received preferred shares rather than common stock—and still, no vote had been scheduled.

96. Had TRxADE taken steps to allow conversion, as promised, at any point prior to March 18, 2024, Eat Well would have been a record holder of TRxADE common stock and fully entitled to participate in the $8.00 per-share dividend. Instead, it was excluded entirely—while Defendants Ajjarapu, Patel, Alford, and other insiders collected

millions.

97. On or about July 9, 2024, TRxADE declared a second special dividend, this time for $1.50 per share, also funded from the proceeds of its asset sale. The dividend was payable only to holders of TRxADE common stock as of the July 19, 2024 record date. As before, Eat Well was denied any opportunity to convert its shares or participate.

98. By delaying the vote and hiding behind audit pretexts, Defendants succeeded in locking Eat Well out of both dividend distributions, worth a combined $9.50 per share. Based on Eat Well's expected equity stake, its exclusion resulted in a loss of millions of dollars—a loss that directly enriched TRxADE's insiders, including Ajjarapu and the Board Members.

99. At all times material hereto, the TRxADE Board knew that Ajjarapu owed a fiduciary duty to Eat Well as a preferred shareholder – one that was contractually entitled to receive TRxADE common stock and the associated rights and benefits. The TRxADE Board knew that Ajjarapu's fiduciary duties included the obligation to act in good faith, prioritize the interests of shareholders like Eat Well, and ensure compliance with TRxADE's contractual obligations under the MIPA.

100. The TRxADE Board also knew that Ajjarapu was intentionally delaying the issuance of common stock to Eat Well, orchestrating the exclusion of Eat Well from the March 6, 2024 and July 9, 2024 special cash dividends, and actively working to enrich himself and the Board members as shareholders at Eat Well's expense. Despite their knowledge of these breaches, the TRxADE Board conspired with and assisted Ajjarapu by approving actions that advanced his scheme, including the declaration of the special

cash dividends and other corporate decisions designed to deprive Eat Well of its rightful benefits as a shareholder.

101. In July 2024, TRxADE finalized an all-stock merger with Scienture, LLC, a New York-based pharmaceutical company. The transaction, valued at $103 million, resulted in TRxADE's acquisition of all Scienture's assets in exchange for a mix of common and non-voting convertible preferred stock. Following the merger, TRxADE intended to rebrand as Scienture Holdings, Inc., with plans to continue trading on the NASDAQ. [7]

102. In September 2024, TRxADE announced that it changed its name and ticker symbol to "Scienture Holdings, Inc." and "SCNX", respectively, and that the business would continue as a NASDAQ-listed company.[8]

103. As a direct and proximate result of Defendants' conduct, Eat Well suffered damages, including but not limited to: (a) the loss of $8,500,000 worth of TRxADE common stock; (b) the loss of dividend income from special cash dividends declared on March 6, 2024, and July 9, 2024; (c) money owed under the $1.15 million secured debenture and $350,000 cash consideration owed to Eat Well; (d) the deprivation of shareholder rights associated with TRxADE common stock, including voting rights and participation in corporate governance; (e) financial losses due to the diminished value

[7] https://www.investing.com/news/company-news/103m-allstock-transaction-merges-trxade-and-scienture-forming-new-company-93CH-3539243

[8] https://www.globenewswire.com/news-release/2024/09/24/2952140/0/en/TRxADE-Health-Inc-Announces-Name-Change-to-Scienture-Holdings-Inc-and-Ticker-Symbol-Change-to-SCNX.html

and rights of the preferred stock improperly issued and (f) the loss of its right to sell its allotment of TRxADE common shares on the open market during periods of favorable stock prices.

104. As a direct and foreseeable consequence of Defendants' misconduct, Eat Well also suffered special damages, including the cascading financial harm that directly resulted from Defendants' conduct. Defendants' failure to issue the promised equity and fulfill the obligations of the MIPA left Eat Well unable to meet key financial covenants with its institutional lenders, including Business Development Bank of Canada and Cortland Credit. Eat Well was pushed into default, triggering aggressive lender actions including default notices, threatened accelerations, and enforcement efforts. To stave off insolvency, Eat Well was forced to sell valuable assets at distressed prices—including its interest in Amara—for a net recovery of zero after accounting for penalties and lender fees. These were a direct byproduct of Defendants' breach and other improper conduct alleged herein

105. The impact has been severe and enduring. Eat Well's debt-to-EBITDA ratios soared, cutting off all conventional refinancing options and leaving the company trapped in high-interest debt. The inability to access capital prevented reinvestment in Eat Well's core operations, including expansion, inventory procurement, and scaling production to meet demand. Compounding this harm, Eat Well was unable to fund the audits required to lift a Cease Trade Order imposed by Canadian regulators—leaving its stock frozen for over two years. The reputational damage was immediate and lasting, impairing investor confidence, undermining commercial relationships, and shutting Eat Well out of key

markets and financing channels.

106. All of these consequences were direct and foreseeable. Defendants knew that Eat Well was relying on the promised equity and cash consideration – and the liquidity that consideration was supposed to provide – so that Eat Well could meet its financial obligations, and Defendants' misconduct created a liquidity crisis that continues to threaten Eat Well's business.

107. All conditions precedent to the filing of this action have occurred, or have been waived or otherwise excused.

**COUNT 1**
**(Breach of Fiduciary Duty against Suren Ajjarapu)**

108. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 - 107 as if fully set forth herein.

109. At all times material hereto, Defendant Ajjarapu was the Chief Executive Officer and Chairman of the Board of Directors of TRxADE.

110. As CEO and Chairman, Ajjarapu owed fiduciary duties to Eat Well arising from (1) Eat Well's status as a common shareholder of Superlatus under the MIPA and Amended Merger Agreement, and Eat Well's right to TRxADE equity associated therewith following the closing of the merger; and (2) Eat Well's status as a preferred shareholder of TRxADE – one that was entitled to common shares of TRxADE.

111. Ajjarapu breached the fiduciary duties he owed to Eat Well by:

a. Failing to cause TRxADE to issue $8,500,000 worth of TRxADE common stock to Eat Well as required under the MIPA, Amended Merger Agreement and Amendment No. 1;

b. Instead causing TRxADE to issue preferred stock to Eat Well, contrary to the terms of the MIPA, Amended Merger Agreement and Amendment No. 1;

c. Failing to cause TRxADE to pay the $1,500,000 debenture it owed to Eat Well, as confirmed by TRxADE in its Form 10-Q, filed with the SEC on March 31, 2024;

d. Orchestrating the timing and declaration of special cash dividends to exclude Eat Well from receiving dividends it would have been entitled to as a common shareholder, and then personally profiting from those misappropriated dividend proceeds;

e. Directing and participating in the sale of Superlatus to Superlatus Foods, Inc. for $1, intending to hinder, delay, or defraud Eat Well as a creditor;

f. Failing to disclose material information to Eat Well regarding these actions, despite a duty to do so;

g. Executing multiple audit confirmations acknowledging the debts owed to Eat Well, while simultaneously delaying or obstructing the repayment of those debts or provide the equity consideration owed to Eat Well;

h. Failing to initiate or authorize a shareholder vote that would have enabled conversion of Eat Well's preferred shares to common stock, despite repeated requests from Eat Well and internal acknowledgment that such a vote was required;

i. Coordinating with Board Members to exclude Eat Well from participating in the special dividends;

j. Knowingly inducing Eat Well to assist with financial reporting and audit tasks beginning in January 2024 by falsely suggesting that its cooperation would result in the long-delayed conversion of its preferred

shares—while concealing that no vote would be held, and that TRxADE had no intention of recognizing Eat Well's equity rights.

112. As a result of Ajjarapu's actions, Eat Well has suffered damages, including those previously stated herein. Ajjarapu's actions were willful, malicious, and in conscious disregard of Eat Well's rights, justifying an award of punitive damages.

113. Ajjarapu's conduct was deliberate and self-interested. Eat Well is entitled to compensatory damages, as well as disgorgement of all dividend distributions and other gains Ajjarapu obtained through his misconduct, and punitive damages to deter such abuse of corporate authority.

**COUNT 2**
**(Breach of Fiduciary)**
**(Against the TRxADE Board)**
**Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson**

114. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 - 107 as if fully set forth herein.

115. This is a cause of action against the TRxADE Board Members for their own breaches of fiduciary duty. As directors of a publicly traded company, each owed Eat Well fiduciary duties of loyalty, good faith, and fair dealing in connection with Eat Well's preferred shareholder status and Eat Well's right to common stock and participation in corporate governance.

116. The Board Defendants owed Eat Well direct fiduciary duties as a known party entitled to receive TRxADE common stock under the integrated structure of the

MIPA, Amended Merger Agreement and Amendment No. 1. By acquiring Superlatus and affirmatively assuming the obligations to issue shares and provide consideration to Eat Well, TRxADE and its Board became directly accountable for discharging those obligations fairly and without conflict.

117. Beyond these general duties, the Board also owed fiduciary obligations in its capacity as the final decision-maker over all material corporate actions—particularly those involving the disposition of assets, the issuance or withholding of shares, and the declaration of shareholder dividends. The Board knew or should have known Eat Well's contractual rights as a Superlatus shareholder, and, at all relevant times, maintained the power to effectuate conversion of Eat Well's shares, approve or block asset sales, and control the timing and structure of dividend declarations.

118. Each Board Member was a significant TRxADE shareholder who stood to gain personally from decisions that excluded Eat Well from receiving common shares.

119. The Board Members breached their fiduciary duties through a series of acts and omissions that advanced their own financial interests at Eat Well's expense, including:

a. Approving the withholding of common shares from Eat Well despite its contractual and equitable entitlement to those shares, including their intentional failure to remedy the error.

b. Failing to initiate or authorize a shareholder vote that would have enabled conversion of Eat Well's preferred shares to common stock, despite repeated requests from Eat Well and internal acknowledgment that such a vote was necessary or required;

c. Authorizing or acquiescing in the March 5, 2024 transfer of Superlatus—including the Sapientia business acquired from Eat Well—to a shell entity for $1.

d. Approving or ratifying the March 6, 2024 special dividend of $8.00 per share, with knowledge that Eat Well would be excluded from the dividend solely because it had not received its common shares due to TRxADE's inaction;

e. Approving or ratifying the July 9, 2024 special dividend of $1.50 per share under the same circumstances;

f. By ensuring that Eat Well did not receive its common shares before the March 18, 2024 and July 19, 2024 record dates, the Board reduced the common stock float and guaranteed that insiders received a disproportionately larger payout. These payouts were authorized, structured, and timed to deprive Eat Well of its rightful economic interest in the company.

g. Failing to disclose to Eat Well or the public any fairness analysis, valuation, or justification for the $1 sale of Superlatus, despite the Board's knowledge that the entity held valuable IP acquired for $10 million just months earlier;

h. Permitting or directing TRxADE officers to solicit Eat Well's assistance with financial reporting and audit tasks throughout 2024 - by falsely suggesting that its cooperation would result in the long-delayed conversion of its preferred shares—while concealing that no vote would be held, and that TRxADE had no intention of recognizing Eat Well's equity rights;

120. In taking these actions, the Board Members acted in bad faith and with gross disloyalty to their obligations as fiduciaries. Their conduct was designed to ensure that insider shareholders—including each Board Member—would benefit from corporate

liquidity events while Eat Well remained frozen out.

121. The Board Members' conduct was deliberate and self-interested. Eat Well is entitled to compensatory damages, disgorgement of all dividend distributions and other gains the Board members obtained through their misconduct.

**COUNT 3**
**(Aiding and Abetting Breach of Fiduciary Duty)**
**Against the TRxADE Board**
**Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson**

122. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1 - 107 as if fully set forth herein.

123. This is a cause of action against the TRxADE Board Members for aiding and abetting Ajjarapu's breaches of his fiduciary duties to Eat Well. While each Board Member owed Eat Well independent fiduciary duties as directors of a public company, they are also liable for knowingly facilitating Ajjarapu's misconduct.

124. As CEO and Chairman of TRxADE, Ajjarapu owed fiduciary duties to Eat Well arising from (1) Eat Well's status as a common shareholder of Superlatus under the MIPA and Amended Merger Agreement, and Eat Well's right to TRxADE equity associated therewith following the closing of the merger; (2) Eat Well's status as a preferred shareholder of TRxADE – and one who was entitled to common shares in the company.

125. As alleged herein, Ajjarapu repeatedly breached those duties by: (a) failing to cause TRxADE to issue $8.5 million in common stock to Eat Well, as required under the MIPA, the Amended Merger Agreement, and Amendment No. 1; (b) issuing

preferred stock instead, contrary to the governing agreements; (c) failing to pay the $1.15 million secured debenture owed to Eat Well, despite repeated confirmations of that debt; (d) timing and declaring special cash dividends to exclude Eat Well, then personally profiting from the proceeds; (e) engineering the $1 sale of Superlatus to a shell entity to hinder Eat Well's ability to collect; (f) concealing material information from Eat Well despite a duty to disclose; (g) signing audit confirmations acknowledging the debts while obstructing repayment and withholding equity; (h) using Superlatus as a corporate shell to shield TRxADE from liability and defraud Eat Well; (i) refusing to authorize the shareholder vote needed to convert Eat Well's preferred shares, despite repeated requests and internal acknowledgment that a vote was necessary; (j) coordinating with Board Members to approve dividends and delay conversion, enriching insiders at Eat Well's expense; (k) soliciting Eat Well's help with audit compliance in March and May 2024, while concealing that its shares would not be converted.

126. Despite full knowledge of Eat Well's contractual rights and Ajjarapu's breaches, the Board Members did not merely acquiesce—they actively approved, facilitated, and profited from the misconduct. They authorized TRxADE to issue preferred stock in violation of Eat Well's right to common shares, ratified the transfer of Superlatus for nominal value after it had been stripped of assets, and, critically, timed two special dividends to ensure that only existing common shareholders—including themselves—would receive millions of dollars in distributions. These dividends were declared after Eat Well's shares had been intentionally withheld, and before any shareholder vote was scheduled that would have enabled conversion.

127. Each Board Member personally benefitted from the March and July 2024 dividends, which were timed to exclude Eat Well while maximizing insider gains. Rather than acting to protect corporate integrity or enforce contractual obligations, the Board used its authority to approve a payout structure that denied Eat Well its rightful equity and transferred value directly to themselves.

128. As a direct and foreseeable result of the Board's knowing and substantial assistance in Ajjarapu's misconduct, Eat Well has suffered significant harm, including the loss of $8.5 million in equity, exclusion from two dividend distributions totaling millions of dollars, and the deprivation of all rights associated with shareholder status.

129. Eat Well is entitled to compensatory damages, disgorgement of all dividend distributions and other gains the Board members obtained through their misconduct.

**COUNT 4**
**(Breach of Contract – MIPA)**
**(Against TRxADE)**

130. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

131. This is an action for breach of contract based on TRxADE's failure to perform its obligations under the parties' integrated transaction, including the MIPA, Amended Merger Agreement, and Amendment No. 1. The consideration owed to Eat Well includes (i) $350,000 in cash, (ii) a $1,150,000 secured debenture, and (iii) $8.5 million worth of common stock in TRxADE.

132. Although TRxADE was not a formal signatory to the MIPA, it is directly

liable for the obligations therein because the MIPA and the Amended and Restated Merger Agreement were components of an integrated transaction through which TRxADE acquired Eat Well's Sapientia intellectual property and other assets. The MIPA explicitly required that Eat Well receive equity in a public company as part of the consideration, referenced a public closing, and tied closing mechanics to events that could only occur through TRxADE's acquisition vehicle.

133. The original and Amended Merger Agreement—executed in tandem with the MIPA—confirmed that all Superlatus shareholders, including Eat Well, would receive TRxADE common stock as part of the merger consideration. Together, the MIPA and Amended Merger Agreement formed a unified deal structure through which TRxADE acquired Eat Well's assets and assumed the obligation to issue Eat Well the promised equity and other consideration.

134. Additionally, TRxADE expressly acknowledged its responsibility for the Debenture and other MIPA obligations in multiple ways:

a. In Amendment No. 1, TRxADE agreed to issue sufficient shares to enable Superlatus to satisfy its obligations to Eat Well under the Sapientia purchase;

b. In two separate audit confirmation letters dated January 24 and January 29, 2024, TRxADE's CEO, Surendra Ajjarapu, confirmed that TRxADE owed Eat Well $1.15 million in principal under the Debenture, along with unpaid interest;

c. In its Form 10-Q filed with the SEC on March 31, 2024, TRxADE disclosed the Debenture as a liability, stating that "the Company [TRxADE] issued a secured debenture to Eat Well Investment Group, Inc. … for the purchase of Sapientia."

135. The Debenture matured on December 31, 2023. It carried an interest rate of 12% per annum, compounded monthly. TRxADE has failed to remit any of the principal or accrued interest.

136. TRxADE has also failed to deliver the remaining consideration required under the MIPA, including: (i) the $350,000 cash component; and (ii) $8.5 million in common stock in a public company. The MIPA made clear that the equity component had to consist of public shares, with release conditioned on SEC and NASDAQ rules. Any claim that Eat Well was never entitled to its common shares contradicts the MIPA's plain language and is further undermined by the Amended Merger Agreement, which confirms that Superlatus shareholders were entitled to common shares in TRxADE.

137. A parent company may be held liable for its subsidiary's contractual obligations where the subsidiary is used as a mere instrumentality and as a vehicle to perpetrate fraud or mislead creditors, where a holding company intervenes in the management of its subsidiaries so as to treat it as a mere department of its own enterprise, where a subsidiary acts as the agent of the parent corporation, or where a parent company voluntarily assumes or guarantees the subsidiary's contractual obligations. While only one of these exceptions is necessary to establish TRxADE's liability, each one is present here.

138. Rather than deliver the consideration, TRxADE knowingly and intentionally withheld common shares, delayed the necessary shareholder vote to convert Eat Well's preferred shares, and transferred Superlatus—including the Sapientia

assets—for nominal consideration ($1) to a shell entity, effectively attempting to extinguish Eat Well's equity rights and contractual remedies. This course of conduct evidences both a material breach and a broader scheme to defraud Eat Well and evade liability.

139. TRxADE's CEO and Board negotiated the Amended Merger Agreement, incorporated and made the merger contingent on Superlatus's compliance with the MIPA, and publicly described the transaction as TRxADE's strategic acquisition of a proprietary plant-based food technology company. TRxADE repeatedly emphasized to investors and regulators that the Sapientia acquisition expanded its portfolio and growth prospects—confirming that TRxADE regarded the transaction not as a mere asset purchase by a subsidiary, but as a core part of its corporate operations.

140. TRxADE's officers—not Superlatus'—communicated with Eat Well post-closing, issued audit letters, and disclosed obligations it owed to Eat Well in TRxADE's public filings.

141. After the merger, TRxADE exercised total control over Superlatus. It owned 100% of the company, and TRxADE's CEO and board members exercised final authority over Superlatus's business decisions. All communications with Eat Well concerning post-merger obligations were made by TRxADE officers using TRxADE email addresses and acting in their TRxADE capacities.

142. TRxADE then used its complete control of Superlatus to defraud Eat Well and shield itself from liability. After acquiring Sapientia from Eat Well through Superlatus, TRxADE stripped the assets from Superlatus, denied Eat Well its

consideration, and transferred Superlatus for one dollar to a newly formed shell company. No valuation analysis was disclosed, and no legitimate business rationale was offered for the transaction. By the time of the transfer, TRxADE had either hollowed out Superlatus or offloaded Sapientia's valuable IP to insiders or their affiliates for little or no consideration.

143. TRxADE also expressly and publicly assumed responsibility for Superlatus's obligations to Eat Well. In Amendment No. 1 to the Amended Merger Agreement—filed with the SEC and signed by Ajjarapu—TRxADE represented that it would issue a sufficient number of shares to allow Superlatus to comply with its obligations to Eat Well under the MIPA.

144. Eat Well performed all of its obligations under the MIPA. It transferred its entire membership interest in Sapientia, including valuable food IP, trade secrets, and business operations, with the reasonable expectation of receiving the promised compensation.

145. TRxADE's failure to pay the $1.15 million in principal due under the Debenture, failure to remit the $350,000 in cash, and failure to issue the $8.5 million in common stock constitute material breaches of contract.

146. As a direct and proximate result of TRxADE's breaches, Eat Well has suffered damages including those stated herein.

**COUNT 5**
**(Breach of Contract – Unpaid Promissory Notes)**
**(Against TRxADE)**

147. Plaintiff Eat Well repeats and re-alleges every allegation set forth in

paragraphs 1-107, as if fully set forth herein.

148. Prior to the transaction by which TRxADE acquired Sapientia and Eat Well's related food-tech assets, Sapentia executed a series of ten promissory notes in favor of Eat Well, totaling $755,000 in principal. The notes were issued between 2021 and 2022, and each set forth a maturity date ranging from August 2023 to February 2025.

149. As part of the MIPA executed in July 2023, Superlatus assumed Sapientia's obligation to repay these promissory notes. Under the MIPA, Eat Well's outstanding debt was not extinguished in the transaction and Superlatus became the obligor on the notes as part of the consideration for acquiring Sapientia.

150. Although TRxADE was not a formal signatory to the MIPA, it is directly liable for Superlatus's obligations under the agreement—including the assumed promissory notes—because the MIPA, Amended Merger Agreement, and Amendment No. 1 were components of an integrated transaction through which TRxADE acquired Sapientia's assets and IP.

151. A parent company may be held liable for a subsidiary's contractual obligations where the subsidiary is used as a mere instrumentality and as a vehicle to perpetrate fraud or mislead creditors, where a holding company intervenes in the management of its subsidiaries so as to treat it as a mere department of its own enterprise, where a subsidiary acts as the agent of the parent corporation, or where a parent company voluntarily assumes or guarantees the subsidiary's contractual obligations. While only one of these exceptions is necessary to establish liability, each is present here.

152. TRxADE's CEO and Board negotiated the Amended Merger Agreement,

incorporated and made the merger contingent on Superlatus's compliance with the MIPA, and publicly described the transaction as TRxADE's strategic acquisition of a proprietary plant-based food technology company. TRxADE repeatedly emphasized to investors and regulators that the Sapientia acquisition expanded its portfolio and growth prospects—confirming that TRxADE regarded the transaction not as a mere asset purchase by a subsidiary, but as a core part of its corporate operations.

153. TRxADE officers—not Superlatus—communicated with Eat Well post-closing, issued audit letters, and disclosed obligations in TRxADE's public filings.

154. After the merger, TRxADE exercised total control over Superlatus. It owned 100% of the company, and TRxADE's CEO and board members exercised final authority over Superlatus's business decisions. All communications with Eat Well concerning post-merger obligations were made by TRxADE officers using TRxADE email addresses and acting in their TRxADE capacities.

155. TRxADE then used that control to defraud Eat Well and shield itself and Superlatus from liability. After acquiring Sapientia from Eat Well through Superlatus, TRxADE stripped the assets from Superlatus, denied Eat Well its consideration, and transferred Superlatus for one dollar to a newly formed shell company. No valuation analysis was disclosed, and no legitimate business rationale was offered for the transaction. By the time of the transfer, TRxADE had either hollowed out Superlatus or offloaded Sapientia's valuable IP to insiders or their affiliates for little or no consideration.

156. TRxADE also expressly and publicly assumed responsibility for Superlatus's obligations. On January 24, 2024, TRxADE's CEO Surendra Ajjarapu

executed a written audit confirmation letter addressed to Eat Well and TRxADE's auditors. In that letter, Ajjarapu confirmed that TRxADE owed Eat Well $755,000 in principal under ten promissory notes, with maturity dates spanning from August 2023 to February 2025. Ajjarapu's confirmation was made in his official capacity as TRxADE's CEO.

157. TRxADE's audit confirmation reflects TRxADE's own understanding that it had assumed liability for the promissory notes through its acquisition of Superlatus and control of the Sapientia transaction. TRxADE treated the debt as its own obligation in both internal and external communications.

158. TRxADE's failure to repay the $755,000 in principal under the assumed notes is a material breach of contract. No portion of the debt has been repaid.

159. As a direct and proximate result of TRxADE's breach, Eat Well has suffered damages in the amount of $755,000 in principal, plus accrued and unpaid interest, costs of collection, and other related financial harm.

160. Eat Well is entitled to judgment against TRxADE in the full amount of the unpaid notes, together with interest, attorneys' fees, and any other relief the Court deems appropriate.

**COUNT 6**
**(Promissory Estoppel)**
**(Against TRxADE and Ajjarapu)**

161. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

162. This is a claim for promissory estoppel arising from Defendants' repeated

inducements and promises that Eat Well's preferred shares would be converted to common shares upon completion of the Company's audit—a process Defendants claimed was delayed due to outstanding materials relating to the Sapientia acquisition.

163. On multiple occasions between January and May 2024, TRxADE and its CEO, Ajjarapu, requested Eat Well's assistance in providing financial, operational, and historical data to TRxADE's independent auditors. The most explicit request came on March 15, 2024, when Ajjarapu forwarded an urgent message from TRxADE's auditors and asked Eat Well to assist immediately, warning: "Please look into this otherwise further delays filing." ***Exhibit H.***

164. These requests were made in the context of prior communications in which TRxADE represented that Eat Well's preferred shares could not be converted to common shares until the Company completed its audit – but would be once the audit was completed. For example, in a March 8, 2024 email, TRxADE's counsel Andy Tucker told Eat Well: "We still need the materials so TRxADE can complete its audit so that you can convert the preferred shares." ***Exhibit G.*** Similar statements were made throughout spring 2024, including a May 14, 2024 email from Ajjarapu directing Eat Well to "do the needful at the earliest." ***Exhibit I.***

165. Taken together, these statements and requests conveyed a clear promise: if Eat Well worked with TrxADE's auditors to complete the audit, TRxADE would move forward with the conversion of Eat Well's preferred shares into common stock. This promise was specific, repeated, and made by TRxADE's agents and Ajjarapu in their official capacities.

166. Eat Well reasonably and foreseeably relied on these promises. Although it had no obligation to assist TRxADE's auditors in the manner it did, Eat Well worked directly with TRxADE's audit team, and delayed pursuing other remedies based on the assurances that conversion would follow.

167. TRxADE and Ajjarapu accepted the benefit of Eat Well's assistance while never intending to follow through on their promises. Instead, they stalled the conversion process, excluded Eat Well from two dividend record dates, and ultimately confirmed that a vote to enable conversion was "not in the agenda". ***Exhibit J.***

168. TRxADE's conduct caused Eat Well to suffer significant harm. In reliance on Defendants' representations, Eat Well invested substantial time and incurred significant expense assisting TRxADE's auditors—performing work that should have been handled by Ajjarapu or others at TRxADE.

169. Eat Well reasonably deferred pursuing alternative steps to enforce its rights and protect its financial position. Because Eat Well's shares were not converted before dividend record dates, Eat Well was excluded from receiving both dividends.

170. As a direct and foreseeable result of Defendants' broken promises, Eat Well suffered significant damages, as it was deprived of the ability to convert its Series B Preferred Stock into TRxADE common shares before the record dates for two special dividends—resulting in the loss of millions of dollars in dividend income. Eat Well also lost the opportunity to sell TRxADE shares on the open market, participate in shareholder governance, and realize the full value of the consideration it was promised in exchange for its $10 million sale of Sapientia's assets.

**COUNT 7**
**(Unjust Enrichment)**
**(Against TRxADE)**

171. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

172. This is a claim for unjust enrichment against TRxADE, arising from its retention of substantial value conferred by Eat Well, without compensation and in violation of equity and good conscience.

173. Eat Well conferred a direct and substantial benefit on TRxADE by transferring ownership of Sapientia Technology Inc.—including its proprietary food formulations, intellectual property, patents, production know-how, and operating business—through a transaction in which TRxADE acquired Superlatus, the entity that purchased Sapientia.

174. The transaction was structured so that TRxADE would become the beneficial owner of Sapientia and its assets. Following the July 2023 merger, TRxADE assumed full control of Superlatus and all assets Superlatus had acquired, including Sapientia. TRxADE officers and directors took over all post-merger decision-making and communications.

175. TRxADE then stripped Superlatus and Sapientia of their value, treating its proprietary technology and commercial assets as TRxADE's own. TRxADE used the assets internally, rebranded around the acquired technology, and exercised dominion over Sapientia's operations, goodwill, and customer relationships—without issuing the equity, cash, or debt consideration owed to Eat Well.

176. Even after taking full control of Superlatus, which held Sapientia's assets, TRxADE solicited Eat Well's assistance in preparing financial records and SEC audit responses relating to the Sapientia business. Eat Well assisted repeatedly and in good faith—even as TRxADE concealed the fact that it had no intention of recognizing Eat Well's shareholder rights or honoring the deal terms.

177. TRxADE knowingly accepted and retained the benefits of this transaction. It benefitted from the ability to market, monetize, and capitalize on the Sapientia IP and trade secrets, while shielding itself from liability by ultimately transferring Superlatus to a shell entity for one dollar.

178. It would be inequitable for TRxADE to retain the substantial value derived from Eat Well's assets while denying Eat Well the $8.5 million in TRxADE common stock, $1.15 million secured debenture, and $350,000 cash consideration it was promised.

179. TRxADE's conduct resulted in the unjust retention of benefits that rightfully belonged to Eat Well, including all economic value attributable to Sapientia's IP, technology, and business goodwill.

180. TRxADE used Superlatus as a mere instrumentality—exercising complete control over its operations while stripping it of assets and rendering it judgment-proof. TRxADE functionally treated Superlatus as a department of its own enterprise, dictating post-merger decisions, managing Superlatus's obligations, and controlling communications with Eat Well. And TRxADE knowingly accepted and retained the benefit of Sapientia's intellectual property and technology while orchestrating a sham divestiture to avoid paying Eat Well the agreed consideration.

181. As a result, Eat Well has suffered damages and is entitled to restitution in the form of: (a) the full value of the unissued equity; (b) the unpaid debt and cash consideration; (c) the reasonable value of the assets TRxADE retained and exploited; and (d) disgorgement of any profits derived from the Sapientia assets.

**COUNT 8**
**(Negligent Misrepresentation)**
**(Against TRxADE and Ajjarapu)**

182. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

183. This is a claim for negligent misrepresentation against Defendants TRxADE and Ajjarapu arising from a series of false statements and omissions Ajjarapu made in connection with the Sapientia transaction, Eat Well's preferred equity, and the rights to convert such equity into TRxADE common stock.

184. As CEO and Chairman of TRxADE, Ajjarapu was the lead negotiator and corporate representative overseeing TRxADE's merger and acquisition of Superlatus, which included its acquisition of Sapientia.

185. Between August 2023 and May 2024, Ajjarapu made numerous material misrepresentations to Eat Well regarding the status of its equity conversion and the steps required to complete it. These included:

a. In a September 6, 2023 email, Ajjarapu claimed that TRxADE was "waiting on SEC approval" before it could initiate the shareholder process necessary to convert Eat Well's preferred shares into common stock. ***Exhibit F***.

*b.* In subsequent communications throughout 2023 and 2024, Ajjarapu reiterated that TRxADE intended to permit the conversion but was only delayed by procedural or regulatory hurdles, including proxy scheduling and audit completion. See, e.g. ***Exhibits F, G, H, I, and K.***

c. In a March 15, 2024 email, Ajjarapu forwarded a request from TRxADE's auditors, asking Eat Well to urgently assist in compiling financial records related to Sapientia, stating: "Please look into this otherwise further delays filing." ***Exhibit H.***

d. In a May 14, 2024 email, Ajjarapu again enlisted Eat Well's help to complete tasks on TRxADE's behalf, asking Eat Well to "do the needful at the earliest," implying that conversion of Eat Well's equity remained forthcoming. ***Exhibit I.***

186. Each of these statements was false. At the time they were made, Ajjarapu knew—or should have known—that TRxADE had no intention of putting the conversion vote on the shareholder agenda, that internal TRxADE communications confirmed the approval of that conversion was never planned or contemplated, and that TRxADE was preparing to declare large special dividends that would be distributed only to common shareholders—thus excluding Eat Well and enriching Ajjarapu and other insiders.

187. Ajjarapu was negligent in making these statements. As CEO and Chairman, he had access to the company's internal planning, legal obligations, and board communications. He knew, or at minimum should have known, that the representations he made to Eat Well were inaccurate and misleading.

188. Ajjarapu made these statements with the intent and expectation that Eat Well would rely on them. Specifically, he intended for Eat Well to (a) refrain from taking

other action to enforce its equity rights, and (b) assist and continue assisting TRxADE with its audit and regulatory compliance efforts under the false belief that conversion would occur.

189. Eat Well justifiably relied on Ajjarapu's statements. It invested time and resources responding to auditor inquiries, complied with repeated information requests, and deferred enforcement action for months in the reasonable belief that TRxADE would fulfill its obligations.

190. As a direct and proximate result of this reliance, Eat Well suffered substantial harm, including the damages previously stated herein.

**COUNT 9**
**(Fraudulent Transfer against TRxADE)**

191. Plaintiff Eat Well repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

192. Eat Well is a creditor of TRxADE and Superlatus. The Amended Merger Agreement, executed by TRxADE, expressly required Superlatus to close the Sapientia acquisition as a condition of the merger. Amendment No. 1 confirmed that Eat Well's equity consideration was still owed and specifically warranted that sufficient shares would be issued by TRxADE to allow Superlatus to meet its obligations to Eat Well under the MIPA.

193. TRxADE executives handled all post-merger communications with Eat Well. TRxADE's CEO, Ajjarapu, confirmed the unpaid debt under the Sapientia transaction in multiple audit confirmation letters. TRxADE also disclosed the debt in

public SEC filings.

194. On March 5, 2024, TRxADE transferred Superlatus—including Sapientia and all associated obligations—to a shell entity, "Superlatus Foods, Inc.," for the nominal sum of $1. The transfer was executed and approved by TRxADE CEO Surendra Ajjarapu and the TRxADE Board Members. No independent valuation, fairness opinion, or consideration analysis accompanied the sale. TRxADE provided no explanation for how an operating business that had acquired valuable IP months earlier could now be worth nothing.

195. Ajjarapu, as the Chief Executive Officer and Chairman of the Board of Directors of TRxADE Health, had control over TRxADE's corporate actions, including asset dispositions and fulfillment of obligations to creditors like Eat Well.

196. The transfer of Superlatus was made without receiving reasonably equivalent value and rendered TRxADE and Superlatus insolvent or significantly less able to satisfy its debts to Eat Well. The transfer bears numerous badges of fraud, including: (1) Superlatus Foods, Inc. was formed for purposes of serving as a shell company, and it was controlled by affiliates of former Superlatus management or TRxADE insiders or their confederates; (2) the transfer was not disclosed to Eat Well and was orchestrated without its knowledge; (3) the sale price of $1 was grossly inadequate for an asset of Superlatus's value; (4) Superlatus was insolvent or became insolvent shortly after the transfer, unable to meet its obligations to Eat Well; and (5) The transfer occurred shortly after Superlatus and TRxADE incurred a substantial debt to Eat Well under the MIPA.

197. As a direct and proximate result of the fraudulent transfer orchestrated by TRxADE, Eat Well has been hindered, delayed, and defrauded in its efforts to collect those sums due to Eat Well under the MIPA, Amended Merger Agreement and Amendment No. 1.

198. The transfer of Superlatus for nominal consideration effectively removed substantial assets from TRxADE that could have been used to satisfy its debt to Eat Well.

199. Under the Uniform Fraudulent Transfer Act, a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

200. Ajjarapu, acting on behalf of TRxADE, made the transfer of Superlatus with actual intent to hinder, delay, or defraud Eat Well, a creditor of TRxADE.

201. The transfer was made without TRxADE receiving reasonably equivalent value.

202. Eat Well is entitled to remedies including avoidance of the transfer and damages equal to the value of the asset transferred or the amount necessary to satisfy Eat Well's claim.

**COUNT 10**
**Civil Conspiracy (Breach of Fiduciary Duty)**
**Against the TRxADE Board**
**Defendants Ajjarapu, Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson**

203. Plaintiff repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

204. This is a claim for civil conspiracy against Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson, based on their knowing participation in a coordinated effort to assist Ajjarapu in breaching his fiduciary duties owed to Eat Well.

205. As CEO and Chairman of TRxADE, Ajjarapu owed fiduciary duties to Eat Well arising from (1) Eat Well's status as a common shareholder of Superlatus under the MIPA and Amended Merger Agreement, and Eat Well's contractual right to TRxADE equity associated therewith following the closing of the merger; (2) Eat Well's status as a preferred shareholder of TRxADE – and one who was entitled to common shares in the company.

206. As alleged herein, Ajjarapu repeatedly breached those duties by: (a) failing to cause TRxADE to issue $8.5 million in common stock to Eat Well, as required under the MIPA, the Amended Merger Agreement, and Amendment No. 1; (b) issuing preferred stock instead, contrary to the governing agreements; (c) failing to pay the $1.15 million secured debenture owed to Eat Well, despite repeated confirmations of that debt; (d) timing and declaring special cash dividends to exclude Eat Well, then personally profiting from the proceeds; (e) engineering the $1 sale of Superlatus to a shell entity to hinder Eat Well's ability to collect; (f) concealing material information from Eat Well despite a duty to disclose; (g) signing audit confirmations acknowledging the debts while obstructing repayment and withholding equity; (h) using Superlatus as a corporate shell to shield TRxADE from liability and defraud Eat Well; (i) refusing to authorize the shareholder vote needed to convert Eat Well's preferred shares, despite repeated requests

and internal acknowledgment that a vote was necessary; (j) coordinating with Board Members to approve dividends and delay conversion, enriching insiders at Eat Well's expense; (k) soliciting Eat Well's help with audit compliance in March and May 2024, while concealing that its shares would not be converted.

207. Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson knew of Ajjarapu's fiduciary duties to Eat Well and knowingly participated in his breaches by conspiring with him to exclude Eat Well from the special cash dividends and other shareholder benefits. Their participation included:

a. Voting to approve the March 6, 2024, and July 9, 2024 special cash dividends, knowing that Eat Well was improperly excluded.

b. Failing to take steps to ensure that Eat Well received the common stock it was entitled to, despite their knowledge of TRxADE's obligations under the MIPA, Amended Merger Agreement and Amendment No. 1.

c. Supporting or remaining silent about corporate actions designed to delay and deny Eat Well's rights as a shareholder.

d. Personally benefiting as shareholders by receiving substantial dividends from the special cash distributions funded by proceeds of TRxADE Health's Florida-based assets and operations.

e. Authorizing or ratifying TRxADE's issuance of preferred stock in violation of Eat Well's right to common shares

f. Authorizing or ratifying TRxADE's sale of Superlatus for nominal value after it had been stripped of assets, or transferred to a TRxADE insider or confederate for wholly inadequate consideration.

208. By knowingly assisting and encouraging Ajjarapu's breaches of fiduciary duty, Defendants Patel, Hariharan, Mani, Fell, Doshi, Jayanthi, Newell, and Peterson acted in concert with him and became liable as co-conspirators under Florida law.

209. The acts of these Defendants were part of a coordinated scheme to deprive Eat Well of its rightful shareholder benefits, including but not limited to: (a) the $8,500,000 worth of TRxADE common stock that should have been issued to Eat Well; (b) substantial dividend income from the March 6, 2024, and July 9, 2024 special cash dividends; (c) voting rights and participation in TRxADE's corporate governance; (d) the ability to sell common shares on the open market, including during periods of favorable stock prices, and (e) the additional consideration Eat Well was owed pursuant to the MIPA, Amended Merger Agreeement and Amendment No. 1.

210. As a direct and proximate result of Defendants' participation in the conspiracy, Eat Well suffered damages, including those previously stated herein.

211. Defendants acted willfully and maliciously, with full knowledge that their actions would harm Eat Well. Their conduct was designed to unjustly enrich themselves and other Board members at Eat Well's expense.

212. Eat Well is entitled to compensatory damages, punitive damages, disgorgement of all improper profits received by Defendants due to their conduct, and all other relief this Court deems just and proper as a result of the Defendants' conspiracy to breach fiduciary duties.

**COUNT 11**
**(Breach of Contract against Superlatus)**

213. Plaintiff repeats and re-alleges every allegation set forth in paragraphs 1-107, as if fully set forth herein.

214. On or about June 2023, Eat Well and Superlatus, Inc. entered the MIPA, under which Superlatus agreed to purchase Eat Well's wholly-owned subsidiary, Sapientia Technology Inc.

i. Under the terms of the MIPA, Superlatus agreed to pay Eat Well an aggregate purchase price of $10,000,000 (the "Purchase Price"), consisting of: Payment of $1,500,000, comprising $350,000 in cash, and a secured debenture in the principal amount of $1,150,000 (the "Debenture");

ii. $8,500,000 worth of common stock in TRxADE, with the share value to be set on the date of the closing of the merger between Superlatus and TRxADE (the "Public Closing").

215. The MIPA stipulated that the shares were to be held in escrow and released to Eat Well to comply with applicable securities laws and regulations.

216. The Debenture was to accrue interest at a rate of 12% per annum, compounded monthly, starting 90 days after the Closing, and was to mature on December 31, 2023.

217. Eat Well fulfilled all of its obligations under the MIPA

218. Despite Eat Well's full performance, Superlatus breached the MIPA by

failing to perform any of its contractual obligations, including the $350,000 in cash, the payment of the debenture, or the $8,500,000 worth of TRxADE common stock.

219. Superlatus's failures to perform these obligations constitute material breaches of the MIPA.

220. As a direct and proximate result of Superlatus's breaches of the MIPA, Eat Well has suffered and continues to suffer damages, including, but not limited to, those stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eat Well Investment Group, Inc. demands judgment against Defendants, as follows:

1. Compensatory damages in an amount to be determined at trial, including:

    a. The value of $8,500,000 worth of TRxADE n/k/a Scienture Holdings, Inc. common stock;

    b. $1,150,000 in unpaid principal and all accrued interest under the secured Debenture;

    c. $350,000 in cash consideration owed under the MIPA;

    d. $755,000 in unpaid principal and all accrued interest on the ten promissory notes confirmed by TRxADE in its January 2024 audit letter;

    e. All dividend distributions Eat Well would have received had it been properly recognized as a common shareholder as of March 18, 2024, and July 19, 2024;

    f. damages associated with Eat Well's loss of its right to sell its

allotment of TRxADE Health common shares on the open market, during times of favorable stock prices;

g. special damages arising from Defendants' acts and omissions, including but not limited to: (i) additional debt servicing obligations Eat Well was forced to incur; (ii) losses from distressed asset sales conducted to satisfy lender demands; (iii) penalties, fees, and default interest charges assessed by creditors; (iv) reputational harm resulting from Eat Well's default status and prolonged Cease Trade Order; (v) the loss of refinancing opportunities and capital access; (vi) the inability to reinvest in business operations, including inventory and production capacity; and (vii) diminished enterprise value resulting from constrained liquidity and operational instability.

h. Damages resulting from Defendants' negligent misrepresentations and unjust enrichment.

i. Additional damages as provided by applicable law, based on TRxADE's fraudulent transfer of Superlatus, Inc. for $1.

2. Equitable relief, including but not limited to:

a. Disgorgement of all dividend distributions and other gains that Ajjarapu and the Board Members obtained through their misconduct;

b. Imposition of a constructive trust over any improperly withheld shares or dividend distributions.

c. Specific performance compelling TRxADE to issue the common stock owed to Eat Well.

3. Punitive damages in an amount sufficient to punish Defendants and deter similar conduct.

3. Pre- and post-judgment interest as allowed by law.

4. Attorneys' fees and costs incurred in this action.

5. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues herein triable as of right by jury.

Respectfully submitted on this 4th day of June, 2025:

*/s/ Casey R. Ingels*
Casey Ingels, Esq., WSBA #32981
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
Direct (253) 341-0252
Email: Casey@ingels.law

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June, 2025, I electronically filed the foregoing document with the U.S. District Court. Notice will automatically be electronically mailed to all individuals who are registered with the U.S. District Court CM/ECF System

*/s/ Casey R. Ingels*
Casey Ingels, Esq., WSBA #32981
*Admitted Pro Hac Vice*